**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

**Hearing Date:**
**January 21, 2020 at 1:45p.m.**

_____X

In re:

NORTHERN BOULEVARD AUTOMALL, LLC
d/b/a/ LONG ISLAND VOLKSWAGEN,

                *Debtor.*

Chapter 11

Case No. 19-41348-nhl

_____X

RICHARD MCCORD, ESQ., as CHAPTER 11 Trustee
For The Estate Of Northern Boulevard Automall, LLC
d/b/a LONG ISLAND CITY VOLKSWAGEN,

                *Plaintiff,*

        - against -

Adv. Pro. No.  19-01070-nhl

5615 NORTHERN LLC, 142 NORTH LLC, 54 BWAY
LLC, DIO LONG, LLC, 2545 BORDEN, LLC, DIO
NORTH, LLC VALLEY MERRICK LLC, and SPYRO
AVDOULOS,

                *Defendants.*

_____X

5615 NORTHERN LLC, 142 NORTH, LLC, 54
BWAY LLC, DIO LONG, LLC, 2545 BORDEN, LLC,
DIO NORTH, LLC VALLEY MERRICK, LLC, and
SPYRO AVDOULOS,

              *Third-Party Plaintiffs,*

        - against -

NIKOLAOS LETSIOS a/k/a NICK LETSIOS,
MARINA LETSIOS, JANET BEBRY, GEORGE
S. PAPANTONIOU, VALLEY AUTO SHOW,
JOHN MARCIANO, RESPECT AUTO QUEENS I,
LLC, STEVAN H. LABONTE and LABONTE
LAW GROUP,

              *Third-Party Defendants.*

_____X

**MEMORANDUM OF LAW (A) IN REPLY ON AND FURTHER SUPPORT OF THIRD-
PARTY DEFENDANTS RESPECT AUTO QUEENS I, LLC'S AND JOHN MARCIANO'S
MOTION TO DISMISS THE FIRST AMENDED THIRD-PARTY COMPLAINT, AND (B)
IN OPPOSITION TO THIRD-PARTY PLAINTIFFS' CROSS-MOTION FOR LEAVE TO
FILE A PROPOSED SECOND AMENDED THIRD-PARTY COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................i

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ......................................................................................................................5

    I.    THE CLAIMS ASSERTED AGAINST RESPECT AUTO I AND MR.
        MARCIANO ARE DERIVATIVE, AND SEEK TO CIRCUMVENT
        THE BANKRUPTCY PROCESS ..................................................................5

        a.   Allowing Third-Party Plaintiffs to Maintain Claims Against Movants
            (All Based on Alleged Diversions of Debtor Property) Would
            Circumvent the Bankruptcy Process, Usurp the Trustee's Authority
            and Undermine the Court-Approved Asset Sale......................................................6

        b.   Each of the Third-Party Claims against Movants is Derivative Because it is
            Based on Harm to the Debtor in the First Instance ...................................................9

            i.      The Claims based on Avdoulos' Guarantees of Debtor Loans
                     Are Plainly Derivative ..................................................................9

            ii.     The Claims for Allegedly Aiding Fiduciary Breaches are Plainly
                     Derivative..................................................................................10

            iii.    The Claim For alleged Inducement of Letsios to Breach
                     the Debtors' Operating Agreement is Plainly Derivative ..............................11

            iv.    Third-Party Plaintiffs' Discussion of Claims that are
                     Not Pleaded as Against the Movants Should be Disregarded.......................12

    II.   EVEN IF THIRD-PARTY PLAINTIFFS HAD STANDING TO MAINTAIN
        THESE CLAIMS (AND THEY DO NOT) THE CLAIMS WOULD
        FAIL UNDER THE IQBAL/TWOMBLY  PLEADING STANDARDS ......................13

    III.   THIRD-PARTY PLAINTIFFS REQUEST FOR LEAVE TO FILE A PROPOSED
        SECOND AMENDED THIRD-PARTY COMPLAINT SHOULD BE DENIED
        BECAUSE IT IS SOUGHT IN BAD FAITH AND WOULD BE FUTILE...................21

CONCLUSION...................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Albany Ins. Co. v. Esses*,
    831 F.2d 41 (2d Cir. 1987) .............................................................................................. 22, 24

*Am. Med. Assoc. v. United Healthcare Corp*.,
    No. 00-CV-2800, 2006 U.S. Dist. LEXIS 93864, 2006 WL 3833440 (S.D.N.Y. Dec. 29,
    2006) ....................................................................................................................................... 27

*Armstrong v. McAlpin*,
    699 F.2d 79 (2d Cir. 1983) .................................................................................................... 22

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009) ............................................................................ *passim*

*Balintulo v. Ford Motor Co*.,
    796 F.3d 160 (2d Cir. 2015) .............................................................................................. 22, 24

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ *passim*

*Block v. First Blood Assocs*.,
    988 F.2d 344 (2d Cir. 1993) .............................................................................................. 28, 29

*Cinema N. Corp. v. Plaza at Latham Assocs.*,
    867 F.2d 135 (2d. Cir. 1989) ................................................................................................. 10

*Corus Bank, N.A. v. Biscayne Bay Lofts, LLC (In re Biscayne Bay Lofts, LLC)*,
    2010 Bankr. LEXIS 2865 (Bankr. S.D. Fla. Aug. 19, 2010) ..................................... 2, 5, 7, 10

*Cyganowski v. Beechwood Re Ltd. (In re Platinum-Beechwood Litig.)*,
    2019 U.S. Dist. LEXIS 173830 (S.D.N.Y. 2019) .................................................................. 14

*DePasquale v. DePasquale*,
    No. 12-CV-2564, 2013 U.S. Dist. LEXIS 30215 (E.D.N.Y. Feb. 28, 2013) ..................... 11, 13

*Diaz v. Shanklin Corp.*,
    No. 16-cv-2332(ADS)(AYS), 2017 U.S. Dist. LEXIS 77410 (E.D.N.Y. May 19, 2017) ................. 26, 27

*DISH Network L.L.C. v. World Cable Inc*.,
    893 F. Supp. 2d 452 (E.D.N.Y. 2012) ................................................................................ 27, 28

*DiVittorio v. Equidyne Extractive Industries, Inc.*,
    822 F.2d 1242 (2d Cir. 1987) ................................................................................................ 23

*F5 Capital v. Pappas*,
    856 F.3d 61 (2d Cir. 2017) ................................................................................................... 22

*Health-Chem Corp. v. Baker*,
   915 F.2d 805 (2d Cir. 1990) ........................................................................................................ 22

*Krys v. Sugrue (In re Refco Sec. Litig.)*,
   2010 U.S. Dist. LEXIS 41386 (S.D.N.Y. 2010) ......................................................... 2, 6, 9, 10

*Louis v. N.Y.C. Hous. Auth.*,
   152 F. Supp. 3d 143 (S.D.N.Y. 2016) ................................................................................. 11, 13

*Lucente v. Int'l Bus. Machines Corp.*,
   310 F.3d 243 (2d Cir. 2002) ........................................................................................................ 22

*Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*,
   740 F.3d 81 (2d Cir. 2014) ................................................................................................. *passim*

*McInnis v. Phillips (In re Phillips)*,
   573 B.R. 626, 2017 Bankr. LEXIS 3173 (Bankr. EDNC, 2017) ................................. 2, 6, 7, 11

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
   487 F. App'x 636 (2d Cir. 2012) ................................................................................................ 20

*Morin v. Trupin*,
   747 F. Supp. 1051 (S.D.N.Y. 1990) ........................................................................................... 23

*Copeland ex rel. NBTY, Inc. v. Rudolph*,
   160 F. App'x 56 (2d Cir. 2005) ................................................................................................... 26

*Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*,
   2004 U.S. Dist. LEXIS 780 (S.D.N.Y. Jan. 22, 2004) .............................................................. 23

*Ouaknine v. MacFarlane*,
   897 F.2d 75 (2nd Cir. 1990) ....................................................................................................... 23

*Phx. Racing, Ltd. v. Lebanon Valley Auto Racing Corp.*,
   53 F. Supp. 2d 199 (N.D.N.Y. 1999) ......................................................................................... 27

*PI, Inc. v. Quality Prods., Inc.*,
   907 F. Supp. 752 (S.D.N.Y. 1995) ....................................................................................... 27, 28

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
   No. CV-08-42 (JG) (VVP), 2013 U.S. Dist. LEXIS 177023 (E.D.N.Y. Sep. 20, 2013)........... 23

*Ruffolo v. Oppenheimer & Co.*,
   987 F.2d 129 (2d Cir. 1993) ........................................................................................................ 22

*Sterling Fin. Services Co., Inc., v. Franklin*,
   259 F. App'x. 367 (2d Cir. 2008) ............................................................................................... 10

*Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.)*,
   855 F.3d 84 (2d Cir. 2017) ...................................................................................................... 6, 9

*Wood ex rel. United States v. Applied Research Assocs.*,
  328 F. App'x 744 (2d Cir. 2009) ............................................................................................................ 22

*Weidberg v. Barnett*,
  752 F. Supp. 2d 301 (E.D.N.Y. 2010) ................................................................................................ 2, 6

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ................................................................................................................................ 22

Federal Rules of Bankruptcy Procedure Rule 7012(b) .................................................................................. 30

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................................................................... 30

## <u>PRELIMINARY STATEMENT</u>

Third-Party Defendants Respect Auto Queens I, LLC ("Respect Auto I") and John Marciano ("Marciano")  (collectively, the "Movants") submit this reply memorandum of law (a) in reply on, and further of, their motion to dismiss the causes of action against each of them in the First Amended Third-Party Complaint, dated September 16, 2019, filed by Defendants and Third-Party Plaintiffs 5615 Northern LLC, 142 North, LLC, 54 Bway LLC, Dio Long, LLC, 2545 Borden, LLC, Dio North, LLC, Valley Merrick, LLC, and Spyro Avdoulos (collectively, the "Third-Party Plaintiffs"), and (b) in opposition to Third-Party Plaintiffs' cross-motion for leave to file a Proposed Second Amended Verified Complaint.[1]

As demonstrated in Point II of Movants' Main Brief and further addressed in Point I of the Argument below, the most glaring defect of the causes of action asserted against Respect Auto I and Mr. Marciano in the First Amended Third-Party Complaint is that the claims are derivative (dependent on the Debtor having been harmed in the first instance), as a result of which (even if they were otherwise cognizable, which they are not), the only party who could possibly maintain them would be the Trustee on behalf of the bankruptcy estate and its creditors.[2]  Third-Party

---

[1] Except where otherwise indicated capitalized terms have the meanings given to them in Movants' November 25, 2019 memorandum of law in support of their motion to dismiss the First Amended Third-Party Complaint as to them ("Movants' Main Brief," Dkt. No. 52).

[2] While Respect Auto I and Mr. Marciano are named in five causes of action in the First Amended Third-Party Complaint, Third-Party Plaintiffs do not address the indemnification and contribution claims in their opposition to the motion to dismiss (Tenth and Eleventh causes of action, respectively), and then request to withdraw those causes of action in their cross-motion to file a Proposed Second Amended Third-Party Complaint.  All of the remaining three causes of action as against Movants are based on alleged diversions of assets from the Debtor, allegedly causing derivative harm to Third-Party Plaintiff Avdoulos, a co-owner of the Debtor, in respect of his personal guarantees of Debtor obligations. This is true for all causes of action at issue (*see* First Amended Third-Party Complaint at ¶¶ 3-5, 17, 190 and 206).

Plaintiffs lack standing to maintain these claims, and allowing them to do so would circumvent the bankruptcy process.[3]

Third-Party Plaintiffs' Request for permission to file a Proposed Second-Amended Third-Party Complaint should be denied on multiple grounds discussed in Point III below. Nonetheless, as detailed in Point I below, the proposed new allegations (ostensibly to fill gaps in their current pleading) highlight the derivative nature of Third-Party Plaintiffs' existing claims as against Respect Auto I and Mr. Marciano by showing that the gravamen of those claims is an attack on Respect Auto I's purchase of a lease at 53-21 Northern Boulevard (referred to by the parties as the "Triangle Property" lease) in a post-petition transaction that the Trustee challenged and then settled as to Respect Auto Queens I with the approval of the Bankruptcy Court.[4]

As Third-Party Plaintiffs know, alleged diversions from the Debtor concerning the Triangle Property were the subject of a separate adversary proceeding by the Trustee against Nikolaos Letsios (who co-owned the Debtor with Avdoulos) and other defendants including, originally, Respect Auto I (Adv. Proc. No. 19-01045-nhl), which the Trustee settled with Respect Auto I and is continuing to actively litigate as against Letsios. Third-Party Plaintiffs' new statements reveal that they are attempting to obtain individualized recoveries based on alleged diversions that are the

---

[3] *E.g., Krys v. Sugrue* (*In re Refco Sec. Litig.*)*,* 2010 U.S. Dist. LEXIS 41386 at *71-72 (S.D.N.Y. 2010); *Weidberg v. Barnett*, 752 F. Supp. 2d 301, 306 (E.D.N.Y. 2010); *McInnis v. Phillips (In re Phillips)*, 573 B.R. 626, 641, 2017 Bankr. LEXIS 3173 (Bankr. EDNC, 2017); *Corus Bank, N.A. v. Biscayne Bay Lofts, LLC (In re Biscayne Bay Lofts, LLC)*, 2010 Bankr. LEXIS 2865 at *11-12 (Bankr. S.D. Fla. Aug. 19, 2010), and discussion of these cases at pages 20-21 of Movant's main brief.

[4] While the First Amended Third-Party Complaint makes a single reference to 53-21 Northern Boulevard, the Triangle Property (at ¶ 53 thereof), Third-Party Plaintiffs now propose to make payments by the Debtor in respect of the Triangle Property a centerpiece of claims that they wish to assert as against Respect Auto Queens I, Mr. Marciano and now Respect Auto Queens II, referring to the Triangle Property no fewer than sixteen (16) times (Proposed Second Amended Third-Party Complaint at ¶¶ 57, 58, 70, 73, 77, 89, 92, 212, 233, 244 and 248).

subject of a  proceeding by the Trustee on behalf of all creditors concerning the Triangle Property. This clearly demonstrates the derivative nature of the claims at issue on this Motion and Third-Party Plaintiffs' lack of standing to maintain them under applicable case law.

Moreover, Third-Party Plaintiffs wholly ignore the fact that all claims of the Trustee against Respect Auto I (including claims concerning the Triangle Property) were *finally resolved*, by:

(a) Respect Auto Queens II, LLC's ("Respect Auto II's") purchase from the Debtor of "all causes of action against Respect Auto Queens I, LLC" for "$155,000" as part of the $950,000 "Purchase Price" of designated assets of the Debtor (Asset Purchase Agreement, at Section 1.2 [a] [ii], Dkt. No. 176-3 in bankruptcy case No. 19-41348-nhl [the "Bankruptcy Case']);

(b) this Court's final order approving the Asset Purchase Agreement, expressly finding that the sale to Respect Auto II was "an arms'-length transaction .. entered into in good faith by the parties," and that "the Trustee exercised his business judgment in determining that" the sale was " in the best interest of the debtor, its estate and its creditors."  (Order dated August 10, 2019, Dkt. No. 183 in the Bankruptcy Case); and

(c) a September 30, 2019 stipulation and final order providing that the Debtor's "showroom operations" were to be moved, at the "cost and expense" of the "Purchaser" (Respect Auto II), to the Triangle Property (53-21 Northern Boulevard) from 56-15 Northern Boulevard (a property leased to the Debtor by Third-Party Plaintiff 5615 Northern LLC), and expressly conditioning the closing of the Debtor's asset sale to Respect Auto II upon VW Credit, Inc.'s approval (by 5:00 pm that day) of the relocation of the Debtor's showroom operations to the Triangle Property (Stipulation and Order dated September 30, 2019, Dkt. No. 230 in the Bankruptcy Case).

Third-Party Plaintiffs' opposition to the instant motion to dismiss (as well as their request for leave to recast their claims against Respect Auto I and Mr. Marciano and to bring in Respect

Auto II based on allegations concerning diversions from the Debtor to the Triangle Property) are simply disguised attempts to revisit and attack the Trustee's authority and decision to settle the Debtor's claims as against Respect Auto I for valuable consideration, while continuing to pursue claims against the co-owners of the Debtor, Letsios (in adversary proceeding No. 19-01045-nhl) and Avdoulos (in this adversary proceeding),  as well as the Court-approved agreement to relocate the Debtor's showroom operations to the Triangle Property at as a condition of the sale of the Debtor's assets to Respect Auto II, which sale was a significant event in the Debtor's Chapter 11 case.

      Third-Party Plaintiffs had every opportunity to contest the Trustee's settlement of claims as against Respect Auto I (which was integral to the asset sale), as well as the Court's findings that the Asset Purchase Agreement was done at arms' length and in good faith,  but did not do so. Third-Party Plaintiffs' involvement in the asset sale from its inception is clear  upon the record, including by the statements of the Trustee in his May 2, 2019 motion for an  order approving procedures respecting the asset sale, that "the Landlords [of properties from which the Debtor operated] and [Spiro] Avdoulos [-- all Third-Party Plaintiffs herein-- ] have represented to the Debtor and the Court that they will cooperate with the Trustee's sale efforts in all reasonable respects…" (Dkt. No. 82 in the Bankruptcy Case, ¶ 14), by the Court's entry of an order granting to 5615 Northern LLC, 142 North LLC and 54 Bway LLC – all Third-Party Plaintiffs herein – an administrative claim for use and occupancy of premises used by the Debtor while the Debtor's asset sale to Respect Auto II was being consummated (Dkt. No. 171 in the  Bankruptcy Case), and by the appearance of counsel for Avdoulos and his companies at each of the seventeen (17) hearings in the Bankruptcy case between March 8 and December 3, 2019.

      As shown in Point I of Movants' Main Brief and further addressed in Point II of the Argument below, all of the averments against Respect Auto I and Mr. Marciano in the First

Amended Third-Party Complaint are conclusory or speculative, and none state a plausible basis for proceeding against them on any of the claims in which they are named. Moreover, Third-Party Plaintiffs' proposed new allegations concerning Movants highlight the defective nature of their claims.

As shown in Point III of the Argument below, Third-Party Plaintiffs' cross-motion seeking leave to file a Second Amended Third-Party Complaint should be denied because it is futile, is sought in bad faith and with dilatory motive, constitutes repeated failure to cure deficiencies, and would create undue delay and prejudice to the Movants.

## ARGUMENT

I.

### THE CLAIMS ASSERTED AGAINST RESPECT AUTO I AND MR. MARCIANO ARE DERIVATIVE, AND SEEK TO CIRCUMVENT THE BANKRUPTCY PROCESS

As Third-Party Plaintiffs acknowledge in their Memorandum of Law, the Second Circuit has defined "'derivative claims' in the context of bankruptcy as ones that 'arise[] from harm done to the estate' and that 'seek[] relief against third parties that pushed the debtor into bankruptcy.'" *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC),* 740 F.3d 81, 89 (2d Cir. 2014) (quoting *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC) ("JPMorgan Chase"),* 721 F.3d 54, 70 (2d Cir. 2013)). A claim is perforce derivative when the alleged "injury is based upon 'a secondary effect from harm done to [the debtor]." *Marshall,* 740 F.3d at 89 (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 704 (2d Cir. 1989)).

Thus, insider equity holders who guaranteed the debt of a debtor in bankruptcy lack standing to sue creditors for allegedly causing a debtor's decline. *Corus Bank, N.A. v. Biscayne Bay Lofts,*

*LLC (In re Biscayne Bay Lofts, LLC)*, 2010 Bankr. LEXIS 2865 at \*11-12 (Bankr. S.D. Fla. Aug. 19, 2010)

"[T]he rationale for denying standing to those claiming loss due to harm to a corporation that led to the corporation's bankruptcy" is that the pursuit of such claims on an individual basis "would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate." *Krys v. Sugrue* (*In re Refco Sec. Litig.*)*,* 2010 U.S. Dist. LEXIS 41386 at \*71-72. (S.D.N.Y. 2010), quoting *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co*., 187 F.3d 439, 442 (4th Cir. 1999)

"In distinguishing derivative claims from … claims exclusive to individual creditors, labels are not conclusive, since plaintiffs often try, but are not permitted, to plead around a bankruptcy.  In other words, [courts] are wary of putting form over substance." *Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.),* 855 F.3d 84, 100 (2d Cir. 2017) (citations omitted).

Moreover, decisions as to who to sue in respect of injuries to a debtor in bankruptcy are committed to the "trustee's fiduciary discretion." *McInnis v. Phillips (In re Phillips)*, 573 B.R. 626, 641, 2017 Bankr. LEXIS 3173 (Bankr. EDNC, 2017)

    a.   Allowing Third-Party Plaintiffs to Maintain Claims Against Movants (All Based on Alleged Diversions of Debtor Property) Would Circumvent the Bankruptcy Process, <u>Usurp the Trustee's Authority and Undermine the Court-Approved Asset Sale</u>

As discussed in detail in Point I c. below, each of the claims asserted by Third-Party Plaintiffs against Respect Auto I and Mr. Marciano in this adversary proceeding is dependent on the Debtor having been harmed in the first instance by alleged pre-petition transfers of Debtor property. Accordingly, the only party who could possibly maintain them would be the Trustee on behalf of the bankruptcy estate and its creditors as a group.  Third-Party Plaintiffs lack standing to maintain these claims, and allowing them to do so would circumvent the bankruptcy process. *E.g., Krys v. Sugrue (In re Refco Sec. Litig.),* 2010 U.S. Dist. LEXIS 41386 at \*71-72 (S.D.N.Y. 2010);  *Weidberg v.*

*Barnett,* 752 F. Supp. 2d 301, 306 (E.D.N.Y. 2010); *McInnis v. Phillips (In re Phillips)*, 573 B.R. 626, 641, 2017 Bankr. LEXIS 3173 (Bankr. EDNC, 2017); *Corus Bank, N.A. v. Biscayne Bay Lofts, LLC (In re Biscayne Bay Lofts, LLC)*, 2010 Bankr. LEXIS 2865 at *11-12 (Bankr. S.D. Fla. Aug. 19, 2010).

Just as importantly, allowing Third-Party Plaintiffs to pursue these derivative claims against the Movants would undermine the bankruptcy distribution process. Essentially, Third-Party Plaintiffs are seeking a double recovery – once as creditors participating on a *pari-passu* basis on any recoveries from the Debtor, and again as individuals seeking separate recoveries outside of the bankruptcy process.

Third-Party Plaintiffs' papers reveal that the defining feature of their claims as against Respect Auto I and Mr. Marciano is an attack on Respect Auto I's purchase of the leasehold interest in the Triangle Property.  (*See* fn. 4, *supra* and Third-Party Plaintiffs' Memorandum at pg. 5, averring that the  Movant's alleged participation in a "scheme … to loot the assets [of the Debtor] and exploit Avdoulos' creditworthiness … culminated with Nick Letsios purportedly assigning the [Triangle Property] Lease … to Respect… in a fraudulent, post-petition transfer"). Allowing Third-Party Plaintiffs to pursue such claims would undermine the Trustee's authority and fiduciary judgment, and the rulings of the Bankruptcy Court.  Third-Party Plaintiffs completely ignore and seek to undermine this Court's Order confirming the Debtor's sale to Respect Auto II of any Debtor claims (including claims asserted by the Trustee against Respect Auto I in Adversary Proceeding No. 19-1045) in consideration for the payment of $155,000 out of the $955,000 Purchase Price of the Debtor's asset sale to Respect Auto II (Dkt. Nos. 176-3 and 183 in the Bankruptcy Case), and this Court's approval of the relocation of the Debtor's Showroom to the Triangle Property (53-21 Northern Boulevard) at

Respect Auto II's expense,  as a condition of the closing of the asset sale (Dkt. No. 230 in the Bankruptcy Case).

Prior to the Court's approval of the Asset Sale Agreement the Trustee had named Respect Auto I as an additional defendant in his action against Letsios and others concerning the Triangle Property based in part on consideration slated to be paid to Letsios for a post-petition transaction dated March 26, 2019, in which Respect Auto I obtained the leasehold interest in the Triangle Property. (Amended Complaint of the Trustee [Dkt. 21] in Adversary Proceeding No. 19-01045, dated May 13, 2019)  Respect Auto I, in turn, interposed cross-claims in that proceeding against Letsios and the Lessee of the Triangle Property, Northern Broadway, Inc., on grounds, *inter alia*, that Respect Auto I had no knowledge of any alleged interest of the Debtor in the Triangle Property prior to March 26, 2019. (Answer of Respect Auto I to the Trustee's Amended Complaint [Dkt. No. in Adversary Proceeding No, 19-01045], dated June 13, 2019, at ¶ 77, pg. 25).   Both the Trustee's final resolution of the Debtor claims against Respect Auto 1 for substantial  consideration to the estate and the relocation of the Debtor's showroom operations to the Triangle Property at Respect Auto II's expense were integral to the sale of Debtor assets which, as aforesaid, was a significant event  in the Debtor's Chapter 11 case.

Here, the Third-Party Plaintiffs' claims disregard the fact that the Trustee brought and settled any Debtor claims against Respect Auto I for valuable consideration paid by Respect Auto II, while continuing to pursue Debtor claims against the persons who actually owned and controlled the Debtor in the years before its bankruptcy filing -- namely, Letsios, Avdoulos and entities that they control, and disregard the fact that the relocation of the Debtor's showroom to the Triangle Property was integral to the court-approved asset sale to Respect Auto II.  The Trustee entered into these agreements in the exercise of his fiduciary judgment and the Court approved them.  Allowing third-Party Plaintiffs

to sue Respect Auto I (or persons or entities related to Respect Auto I) predicated on alleged secondary harm from purported diversions of Debtor property is not only prohibited by controlling case law regarding derivative claims (discussed more fully below) but would permit and approve an after-the-fact attack on the Trustee's decisions and the Court's rulings.

      b.  Each of the Third-Party Claims against Movants is Derivative
          Because it is Based on Harm to the Debtor in the First Instance

Each of the claims asserted by Third-Party Plaintiffs as against Movants asserts a secondary consequence of alleged harm to the Debtor in the first instance. Accordingly, Third-Party Plaintiffs have no standing to maintain them as a matter of law. (*E.g.*, *Marshall v. Picard, supra,* 740 F.3d at 89 (2d Cir. 2014); *Tronox Inc. v. Kerr-McGee Corp., supra,* 855 F.3d at 100 (2d Cir. 2017)). The only harms that Third-Party Plaintiffs' assert in their claims against the Movants in the Third-Party Complaint consist of Avdoulos' alleged "expos[ure] to liability . . .as [a] guarantor" of debts of the Debtor following alleged "loot[ing] and diver[sion] of NBA's assets". (First Amended Third-Party Complaint at ¶¶ 3-4)  Plaintiffs  lack standing to maintain these claims because "the loss that they are complaining about is a part of the very same loss asserted" in the Debtor's bankruptcy proceeding, and their alleged claims against Movants  "should be dismissed *with prejudice* " . . . because [they are] by nature derivative."   *Krys v. Sugrue, supra*, 2010 U.S. Dist. LEXIS 41386 at *44-45 and 58 (S.D.N.Y. 2010) (emphasis in original).

      i.    The Claims based on Avdoulos' Guarantees
          of Debtor Loans Are Plainly Derivative

In an assertion that is plainly contrary to case law, Third-Party Plaintiffs assert that "any liability incurred by Avdoulos to VCI, in his capacity as a guarantor, is … particular to Avdoulos". *See* Third-Party Plaintiffs' Memorandum of Law at 25.  It is well-settled that insider equity holders who guaranteed the debt of a debtor in bankruptcy lack standing to sue third parties for allegedly

causing a debtor's decline or insolvency.  *Corus Bank, N.A. v. Biscayne Bay Lofts, LLC (In re Biscayne Bay Lofts, LLC)*, 2010 Bankr. LEXIS 2865 at *11-12 (Bankr. S.D. Fla. Aug. 19, 2010). *Accord Cinema N. Corp. v. Plaza at Latham Assocs.,* 867 F.2d 135, 139 (2d. Cir. 1989); *Krys v. Sugrue, supra,* 2010 U.S. Dist. LEXIS 41386 at *73 (S.D.N.Y. 2010) ("any claims, if they exist, belong to [the debtor] itself, and defendants, as guarantors, lack standing to assert them as either defenses or counterclaims."); *Sterling Fin. Services Co., Inc., v. Franklin,* 259 F. App'x. 367, 369 (2d Cir. 2008) ("guarantors in New York do not have standing to assert affirmative defenses properly belonging to the obligor, the party whose obligations the guarantors have guaranteed.").

ii.    <u>The Claims for Allegedly Aiding Fiduciary Breaches are Plainly Derivative</u>

Third-Party Plaintiffs assert that Letsios, as the managing member of the Debtor, owed Avdoulos fiduciary duties which were particular to Avdoulos and independent of those duties owed to the Debtor, and that Movants somehow aided and abetted Letsios in breaching those duties.  *See* Third-Party Plaintiffs' Memorandum at 23-24.  The only aiding and abetting allegation concerning Movants consists of a conclusory assertion that Movants allegedly "orchestrat[ed] a scheme to loot . . . assets of [the Debtor]" with no non-conclusory factual support. *See* Third-Party Complaint at ¶ 190 and discussion in Point II below.

Once again, Third-Party Plaintiffs plead harm to the Debtor in the first instance (looting) but then attempt in their memorandum of law to rebrand the harm as particular to Avdoulos.  *See* Third-Party Plaintiffs' Memorandum of Law at 23-24.  This attempt is plainly erroneous, as "derivative claims" are those that "arise from harm done to the estate and that seek relief against third parties that pushed the debtor into bankruptcy."  *Marshall,* 740 F.3d at 89 (2d Cir. 2014) (internal marks and quotation omitted).

Moreover, the law is well-settled that "plaintiffs cannot use their opposition to [a] motion to dismiss to raise new claims or arguments." *Louis v. N.Y.C. Hous. Auth.,* 152 F. Supp. 3d 143, 158 (S.D.N.Y. 2016) (quoting *Kiryas Joel Alliance v. Vill. of Kiryas Joel,* No. 11-CV-3982, 2011 U.S. Dist. LEXIS 137074, 2011 WL 5995075, at *10 n.9 (S.D.N.Y. Nov. 29, 2011); *see also DePasquale v. DePasquale,* No. 12-CV-2564, 2013 U.S. Dist. LEXIS 30215, *28 n.6 (E.D.N.Y. Feb. 28, 2013) (same).

### iii. The Claim For alleged Inducement of Letsios to Breach the Debtors' Operating Agreement is Plainly Derivative

The same analysis applies to Third-Party Plaintiffs' conclusory allegations that Movants somehow substantially assisted Letsios in breaching the Debtor's operating agreement. *See* Third-Party Plaintiffs' Memorandum at 24-25. Again, Third-Party Plaintiffs' admit that their claim concerns alleged harm to the Debtor in the first instance -- causing or allowing Letsios to "divert assets from NBA" (Third-Party Complaint at ¶ 168) and allegedly "render[ing the Debtor] insolvent, leaving Avdoulos holding the bag on millions of dollars in liabilities" (Third-Party Plaintiffs' Memorandum at 24). However, Third-Party Plaintiffs then argue that (notwithstanding their derivative nature) these allegations support individual causes of action because "the trustee has not sought to enforce the Operating Agreement against Letsios on behalf of the Debtor." *Id.* The Trustee's decisions have no bearing on whether the claims seek recovery for injury that was suffered uniquely by the Third-Party Plaintiffs (as opposed to arising secondarily from harm to a debtor). *See Marshall,* 740 F.3d at 89. ("a derivative injury is based upon a secondary effect from harm done to the debtor") Moreover, as shown in Movants' Main Brief, decisions as to who to sue in respect of injuries to a debtor in bankruptcy are committed to the "trustee's fiduciary discretion." *McInnis v. Phillips (In re Phillips)*, 573 B.R. 626, 641, 2017 Bankr. LEXIS 3173 (Bankr. EDNC, 2017).

11

In sum, all of the alleged harms in the three causes of action against Movants are based upon "a secondary effect from harm [allegedly] done to [the debtor]" in the form of alleged looting, and the claims "seek relief against third parties that [allegedly] pushed the debtor into bankruptcy." *Marshall*, *supra*, 740 F.3d at 89 (internal marks and quotation omitted), quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704 (2d Cir. 1989). These alleged harms fit squarely within the definition of derivative claims advanced by Third-Party Plaintiffs themselves. *See* Third-Party Plaintiffs' Memorandum of Law at 23.

         iv.     Third-Party Plaintiffs' Discussion of Claims that are
                   Not Pleaded as Against the Movants Should be Disregarded

Third-Party Plaintiffs' Memorandum discusses two claims for which they contend the Debtor allegedly was not harmed in the first instance. However neither of those claims is pleaded as against the Movants.

Specifically, Third-Party Plaintiffs' Memorandum contains a discussion of Avdoulos' legal fees in the defense of the Trustee's claims against him based on a "rent concession agreement" that Avdoulos alleges was "forged." (Third-Party Plaintiffs' Memorandum at pg. 25). However, the only cause of action in the First Amended Third-Party Complaint concerning the Trustee's claims against Avdoulos regarding the rent concession agreement (Twelfth cause of action), is pleaded as against Letsios only (and not the Movants). (First Amended Third-Party Complaint at ¶ 277). Similarly, Third-Party Plaintiffs' Memorandum contains a discussion of injuries allegedly suffered by Avdoulos in connection with loan applications in Avdoulos' name for a single vehicle (a VW Atlas) that the Debtor allegedly took into its inventory. However, the only cause of action in the First Amended Third-Party complaint concerning such loan applications (Fourth cause of action) is pleaded as Nikolaos Letsios, Bebry, Papantoniou and Marina Letsios (and not as against the Movants). (First Amended Third-Party Complaint at ¶¶ 80-89 and 158).

Movants are not called upon to address Third-Party Plaintiffs' discussion of claims that are not pleaded as against them.   However it bears noting that, if Third-Party Plaintiffs are somehow now seeking for the first time to add the Movants to these claim, they should be prohibited from doing so under the rule that "plaintiffs cannot use their opposition to [a] motion to dismiss to raise new claims or arguments." *Louis v. N.Y.C. Hous. Auth., supra,* 152 F. Supp. 3d at 158 (S.D.N.Y. 2016); *DePasquale v. DePasquale, supra,* No. 12-CV-2564, 2013 U.S. Dist. LEXIS 30215, *28 n.6 (E.D.N.Y. 2013) (same).

II.

### EVEN IF THIRD-PARTY PLAINTIFFS HAD STANDING TO MAINTAIN THESE CLAIMS (AND THEY DO NOT) THE CLAIMS WOULD FAIL UNDER THE *IQBAL/TWOMBLY* PLEADING STANDARDS

Even if the plainly derivative nature of the claims against Movants did not preclude Third-Party Plaintiffs from pursuing them (and it does), Third-Party Plaintiffs fail to meet the Iqbal/Twombly pleading standards with respect to Movants. These pleading failures are separate, independent grounds for dismissing the third-party claims as against Movants.

As detailed in Movants' Main Brief, all of the averments against Respect Auto I and Mr. Marciano in the First Amended Third-Party Complaint are conclusory or speculative, and none states a plausible basis for proceeding against Movants on any of the claims in which they are named. Stripping each of the three claims against Movants of its "formulaic recitation of elements" and focusing only on "well-pleaded facts" regarding each Movant without reference to the "labels and conclusions" that Third-Party Plaintiffs attach to them, it is clear that the "factual content" of the allegations against Movants "do[es] not permit the court to infer more than the mere possibility of misconduct" within the meaning of *Bell Atl. Corp v.*

*Twombly, 550* U.S. 544, 555-56 (2007) and *Ashcroft v. lqbal,* 556 U.S. 662, at 675, 678-679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

    a. <u>The Conspiracy Count</u>

    As set forth in Movants' Main Brief (at pg. 15), where conspiracy allegations are made to ascribe liability for an underlying tort, facts must be pleaded as against each participant showing "(1) [a] corrupt agreement between two or more persons, (2) an overt act, (3) [each person's] intentional participation in the furtherance of [the] plan or purpose, and (4) … resulting damage." *Cyganowski v. Beechwood Re Ltd.* (*In re Platinum-Beechwood Litig.*), 2019 U.S. Dist. LEXIS 173830 at *85 (S.D.N.Y. 2019).  Each element must be supported by allegations setting forth "times, facts and circumstances" of each defendants' involvement.  *Ibid,* 2019 U.S. Dist. LEXIS 173830 at *161.

    Particular scrutiny is required where, as here, a conspiracy count "seek[s] to hold ... [alleged] co-conspirator defendants secondarily liable for ... primary torts committed by ....insiders" of a business. *Cyganowski, supra,* 2019 U.S. Dist. LEXIS 173830 at 159-160.

    The First Amended Third-Party Complaint  contains a formulaic recitation of the "corrupt agreement" element of the conspiracy count as against Movants, consisting only of a conclusory averment that all Third-Party Defendants, "agreed … with each other to loot and divert assets of NBA" (First Amended Third-Party Complaint ¶ 205).  The pleading contains no clear statement of any facts or circumstances showing when or how each Movant is alleged to have joined the purportedly corrupt agreement, and indeed no clear statement as to the aim of the agreement (speculating that unidentified Debtor property may have been diverted by Letsios and others who operated the Debtor's business to an unidentified "new business venture" which could have been "Respect, Valley [Auto], *and/or* Long Island Kia"). Third-Party Complaint ¶¶ 204-207 (emphasis added). (*See* Movants' Main Brief (at pgs. 15-17)

As set forth in Point III below, Third-Party Plaintiffs' request to further amend their pleading should be denied on multiple grounds, including that it is made in bad faith and that further amendment would be futile.  Nonetheless it bears noting that, far from curing the defects in their conspiracy count as against Movants, Third-Party Plaintiffs' arguments concerning  proposed new allegations show that the claim is made up out of whole cloth.

Regarding the "agreement" element of the conspiracy count, Third-Party Plaintiffs now assert that the aim and "culminat[tion]" of the alleged conspiracy was "Nick Letsios purportedly assigning the [Triangle Property] Lease … to Respect… in a fraudulent, post-petition transfer" (Third-Party Plaintiffs' Memorandum at pg. 5), notwithstanding that the relocation of the Debtor's operations to the Triangle Property was agreed to by the Trustee and approved by the Court as a condition to the closing of the asset sale.  Specifically, Third-Party Plaintiffs ask the Court to rule that the existence of a pre-existing "agreement or a series of agreements by and between Letsios and/or Marciano to loot and render the Debtor insolvent" (which agreement is unspecified as to facts and circumstances, and obviously undocumented) is somehow "plausib[ly] infer[rable]" from the March, 2019, post-petition transaction in which Respect Auto I agreed to purchase  the Triangle Property Lease from Letsios or one of his companies "for $600,000." (Third-Party Plaintiffs' Memorandum at pgs. 9-10)  However, this request makes no sense.  Nothing about a fully documented agreement to purchase a leasehold interest from Nikolaos Letsios in March, 2019 supports any inference that the purchaser (Respect Auto I) or Mr. Marciano as a Respect representative, had a pre-existing and unwritten agreement for Letsios to loot the Debtor and cause it to file for bankruptcy protection.

Indeed, as Third-Party Plaintiffs well know, Respect Auto I is pursuing claims against Letsios for his failure to disclose any interest of the Debtor in the Triangle Lease Property before the March, 2019 transaction (Answer of Respect Auto I in Adversary Proceeding No. 19-01045, dated June 13, 2019 [Dkt. No. 29 therein]).

Equally unavailing to Third-Party Plaintiffs are their proposed new allegations that "Respect Defendants" were parties to an earlier "off-paper" agreement (unspecified as to time, facts and circumstances) to "loot the [Debtor's] assets," "exploit Avdoulos' creditworthiness," and "render Debtor insolvent" and that such an agreement is somehow "memorialized" by the March, 2019 documents transferring the Triangle Property Leasehold to Respect Auto I.  (Third-Party Plaintiffs' Memorandum, pg. 5)  Nothing in those March, 2019 documents (copies of which are annexed as Exhibit C to the Trustee's Amended Complaint in Adversary Proceeding No. 19-01045, Dkt. No. 21) supports any inference of (much less "memorializ[es]") a pre-existing agreement to loot the Debtor or exploit Avdoulos.  Indeed the documents contain no mention of either the Debtor or Avdoulos.

Moreover, while Third-Party Plaintiffs' failure to meet the pleading standards of *Iqbal* and *Twombly* concerning the "agreement" element of their conspiracy count as against Movants is fatal to the claim by itself,  it bears noting that none of the references to Movants in the First Amended Third-Party Complaint sets forth the "times, facts and circumstances" of any involvement of Movants in the management, financing or operation of the Debtor's dealership from which the Court can reasonably infer the satisfaction of the remaining elements of the Conspiracy count (such as "overt acts" and "intentional participation" of each Movant in furtherance of the alleged conspiracy).  *See* Third-Party Complaint ¶¶ 205-207 and Movants' Main Brief at pgs. 15-17).[5]

---

[5]  As shown in Point III a. ii below (concerning futility of amendment), there are no statements in Third-Party Plaintiffs' Proposed Second Amended Complaint attempting to show any involvement of Respect Auto I and Respect Auto II in the Debtor's affairs other than their post-petition participation in the sale transaction that the Court has approved and the purchase of the leasehold of the Triangle Property, to which the Debtor's showroom was relocated with the approval of the Court.  Moreover, the only proposed new averments purporting to connect Mr. Marciano to alleged pre-petition looting by Letsios and others who managed the Debtor's operations are again stated as mere possibilities that are contradicted by other allegations in the pleading itself and that are not accompanied by any facts from which any plausible inference of liability can be drawn.

Accordingly, for all of the foregoing reasons, Third-Party Plaintiffs have failed to meet the pleading standards pursuant to *Iqbal* and *Twombly* for a conspiracy claim as against the Movants.

b.  <u>The Tortious Interference Count</u>

As Third-Party Plaintiffs acknowledge in their Memorandum of Law, the elements of tortious interference with a contract are "(1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract, and (5) damages resulting therefrom." *See* Third-Party Plaintiffs' Memorandum of Law at 15 (citing *Highland Capital Mgmt. LP v. Schneider*, 198 F. App'x 41, 45 (2d Cir. 2006); citing, Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82 (1996)).  To meet the *Iqbal/Twombly* standards, Third-Party Plaintiffs must show that the pleading includes factual allegations showing each Movants' involvement in of the elements of the cause of action. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009); quoting, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955 (2007)

As shown in Movants' Main Brief, there are no allegations, identifying the timing and particulars of any conduct by Movants that "intentionally procured" Letsios' alleged breach of the Debtor's operating agreement.  To the contrary, this cause of action simply repeats earlier generalized statements concerning a purported unwritten "side deal or agreement" with Letsios (unidentified as to time and terms) (Third-Party Complaint ¶ 174), and alleging an advance of funds "that were used as a deposit for the purchase" of a Kia dealership (*id.* ¶ 176) (alleging elsewhere that the source of funds for such a deposit was *either* Movant or, alternatively, the Debtor, *see id., ¶* 96). While the First Amended Third-Party Complaint refers to alleged instances of looting of the Debtor

by Letsios and/or others who handled the Debtor's operations, there is no allegation of a single act by Movants to advance such a scheme.  *See* Movants' Main Brief at 12-13.

Third-Party Plaintiffs argue, in opposition, that they have adequately pleaded nine (9) enumerated  instances of purported conduct by Movants that they contend show  "intentional…
…procure[ment]" of Letsios' breaches of the operating agreement or other "actionable conduct" of Movants supporting this count. (Third-Party Plaintiffs' Memorandum at pgs. 13-15)

Even a cursory review of these purported "instances" (and the allegations that Third-Party Plaintiffs reference to support them) reveals that **all of** the alleged conduct is attributed to Letsios and others who operated the Debtor's business -- and none to Movants. Enumerated instance Nos. 1-3 concern the alleged diversion of assets of the Debtor by "Letsios, Marina Letsios, Bebry and/or Papantoiou" to an entity (Valley) that was allegedly "owned directly or indirectly by Nick Letsios" and that held the leasehold interest in the Triangle Property prior to its assignment to Respect Auto I.  No act of any Movant is alleged.  (Third-Party Plaintiffs' Memorandum at pg. 13).

Enumerated instance No. 7 is a recitation of acts alleged in the pleading to constitute diversions of Debtor property to Valley or one or another "unrelated business venture." (*Ibid* at pg. 14 and First Amended Third-Party Complaint at ¶¶ 59 and 66-69). Again, no act of any Movant is alleged in these paragraphs.

Enumerated instance Nos. 4, 5 and 6 (Third-Party Plaintiffs' Memorandum at pg. 14) are not conduct of any kind but, rather, references to conclusory assertions in the pleading that include Movants as **possible** "direct or indirect benefi[ciaries]" of alleged diversions of Debtor assets by Letsios and his group (Referring to First Amended Third-Party Complaint ¶61 that such diversions were made for the direct or indirect benefit of  "Nick Letsios, Marina Letsios, **and/or** John Marciano or his company, Respect," emphasis added).

Third-Party Plaintiffs' further allegation that Mr. "Marciano and/or Respect had an indirect or direct beneficial or financial interest in Valley" – an alleged recipient of diversions from the Debtor (ibid at ¶ 64)  is devoid of any facts on the basis of which the Court could infer anything at all.  The possibilities of what might constitute an "indirect.. beneficial interest" in an entity (Valley) are essentially endless. Moreover, the allegation is flatly contradicted by Third-Party Plaintiffs in the very same pleading.  (*E.g.,* First Amended Third-Party Complaint ¶¶  54 and 56, alleging that "Valley is owned directly or indirectly by Nick Letsios," and that "Valley was operated, managed and controlled by Nick Letsios.")  Third-Party Plaintiffs' vague and conclusory speculation that one or another Movant may have had an indirect financial interest in Valley (or any other entity owned or controlled by Letsios) is devoid of any supporting factual allegations, and provides no support for any element of Third-Party Plaintiffs' tortious interference claim under the *Iqbal/Twombly* pleading standards.

Third-Party Plaintiffs' final assertions ostensibly supporting an inference that Movants intentionally procured breaches of the Debtor's operating agreement by Letsios (enumerated instance Nos. 8 and 9), consist of a bald repetition of their attacks on the post-petition assignment of the leasehold interest in the Triangle Property to Respect Auto I, which the Trustee and the Bankruptcy Court approved in connection with the asset sale to Respect Auto II.  Third-Party Plaintiffs state, as No. 9 on their list of "actionable conduct" by Movants pleading tortious interference, "9. The scheme culminated with Nick Letsios purportedly assigning the [Triangle Property] Lease…from Valley to Respect… in a fraudulent post-petition transfer…". (Third-Party Plaintiffs' Memorandum at 15).  As noted above with respect to the conspiracy count (Point II. a., *supra*), nothing about a fully documented agreement to purchase a leasehold interest from Letsios in March, 2019 supports any inference that the purchaser (Respect Auto I) or Mr. Marciano had a pre-existing and unwritten agreement for Letsios to loot the Debtor and cause it to file for bankruptcy protection.

Accordingly, for all of the foregoing reasons, Third-Party Plaintiffs have failed to meet the pleading standards pursuant to *Iqbal* and *Twombly* for a tortious interference claim against the Movants.

    c.  <u>The Aiding and Abetting Breach of Fiduciary Duty Count</u>

As Third-Party Plaintiffs acknowledge, the elements for aiding and abetting a breach of fiduciary duty are "'(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damages as a result of the breach." *See* Third-Party Plaintiffs' Memorandum of Law at 17 (citing *Kaufman v. Cohen*, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dept. 2003)).  However, Third-Party Plaintiffs fail to point out that, "[t]o satisfy the 'knowing participation' element, a plaintiff must show that the defendant provided '***substantial assistance***' to the primary violator." *Meridian Horizon Fund, LP v. KPMG* (*Cayman*)*,* 487 F. App'x 636, 639 and 643 (2d Cir. 2012) (citations omitted) (emphasis added).

As shown in Movants' Main Brief, all of the alleged fiduciary breaches in the pleading are attributed to Letsios and others who ran the Debtor's operations.  There are only three allegations concerning Movants in this count, none of which meets *Iqbal/Twombly* pleading standards as against either Movant.  The first such allegation consists of a conclusory statement that Movants somehow engaged in unidentified conduct that Third-Party Plaintiffs characterize as "orchestrating a scheme to loot assets of the Debtor" (Third-Party Complaint, ¶ 190), with the pleading alternatively attributing the alleged "scheme" to Letsios, **"and/or"** to Movants. (First Amended Third-Party Complaint ¶ 65)  The second such allegation identifies the parties who allegedly benefitted from such looting as managers of the Debtor **"and/or"** the Movants (*Id.* at ¶ 76, *emphasis added*). The third such allegation is a vague assertion that Movants provided Letsios with unspecified "consideration, in cash and/or in-kind, through various financial arrangements" (unidentified as to time or content) and a "consulting agreement"

(unidentified as to time or content) (*Id* ¶ 191).  The count contains no allegations (a) stating the timing and circumstances of any conduct by Movants that knowingly and intentionally induced Letsios or others to breach fiduciary duties to Avdoulos, and (b) showing how such conduct "substantial[ly] assist[ed]" Letsios in effecting such a breach. Accordingly, Third-Party Plaintiffs have failed to meet the pleading standards for an aiding and abetting claim against the Movants.

Third-Party Plaintiffs' only argument in opposition to dismissal of this count is their contention that their allegation that Movants offered Letsios "consideration, in cash and/or in-kind, through various financial arrangements" (unspecified in the pleading itself) (First Amended Third-Party Complaint ¶ 191), is actually a reference to consideration recited for the March, 2019 transfer of the Triangle Property leasehold interest to Respect Auto 1, reflected in documents attached to the Trustee's complaint against Letsios in Adversary Proceeding No. 19-01045. (*See* Third-Party Plaintiffs' Memorandum at pg. 15 and Fn. 68)

Once again, as noted above with respect to the conspiracy count (Point II. a., *supra*) and the tortious interference count (Point II. b., *supra*), there is in nothing about the March, 2019 agreements concerning the Triangle Property lease to support any inference of a pre-existing and unwritten agreement for Letsios to loot the Debtor and cause it to file for bankruptcy protection. Accordingly, Third-Party Plaintiffs have failed to meet the pleading standards pursuant to *Iqbal* and *Twombly* for an aiding and abetting claim against the Movants.

III.

THIRD-PARTY PLAINTIFFS REQUEST FOR LEAVE TO FILE A PROPOSED<br/>SECOND AMENDED THIRD-PARTY COMPLAINT SHOULD BE DENIED<br/>BECAUSE IT IS SOUGHT IN BAD FAITH AND WOULD BE FUTILE

As Third-Party Plaintiffs acknowledge, their request or leave to file a proposed second amended third-party complaint requires "the opposing party's written consent or the court's leave."

Under Fed. R. Civ. P. 15(a)(2) courts are free to give leave when justice so requires.  *See id.*  While the Court has "broad discretion in determining whether to grant leave to amend,"  such requests "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]"  *United States ex rel. Ladas v. Exelis*, Inc., 824 F.3d 16, 28 (2d Cir. 2016) (citation omitted), citing *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *Armstrong v. McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983).

Third-Party Plaintiffs' cross-motion for leave to file a Second Amended Third-Party Complaint should be denied because it is futile, is sought in bad faith and with dilatory motive, follows a failure to cure deficiencies, and would create undue delay and prejudice to the Movants.

a.  <u>Third-Party Plaintiffs' Cross-Motion is futile</u>

 "'Leave to amend may properly be denied if the amendment would be futile,'"  *F5 Capital v. Pappas,* 856 F.3d 61, 89 (2d Cir. 2017) (quoting *Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014) or "[w]here granting leave to amend is unlikely to be productive," *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993).  *See also Wood ex rel. United States v. Applied Research Assocs.,* 328 F. App'x 744, 750 (2d Cir. 2009) ( "One good reason to deny leave to amend is when such leave would be futile"); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("Where . . . there is no merit in the proposed amendments, leave to amend should be denied"); *Albany Ins. Co. v. Esses,* 831 F.2d 41, 45 (2d Cir. 1987) (same).  "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *Balintulo v. Ford Motor Co*., 796 F.3d 160, 164-65 (2d Cir. 2015); *see also Lucente v. Int'l Bus. Machines Corp*., 310 F.3d 243, 258 (2d Cir. 2002) (same).

i.     The Request to Add Respect Auto II Should Be Denied

First, Third-Party Plaintiffs' Proposed Second Amended Complaint proposes to  add two new defendants to the action: Respect II and Northern Broadway. [6]  Third-Party Plaintiffs' only assertion ostensibly supporting leave to add Respect Auto II is that "Respect II is an acknowledged affiliate of Respect I."  (Third-Party Plaintiffs' Memorandum of Law at 28).  The mere allegation that an entity is an affiliate is insufficient to link it with allegations of liability.  *See DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1249 (2d Cir. 1987) (holding that the mere allegation that an entity was an affiliate of an existing defendant was insufficient to link it to alleged misrepresentations and add it as a party); *see also Ouaknine v. MacFarlane,* 897 F.2d 75, 80 (2nd Cir. 1990) (same);  *Precision Assocs. v. Panalpina World Transp., (Holding) Ltd.,* No. CV-08-42 (JG) (VVP), 2013 U.S. Dist. LEXIS 177023, *58-59 (E.D.N.Y. Sep. 20, 2013) (holding that "[i]t is undisputed that conclusory allegations that an affiliate joined a conspiracy are insufficient to allege that the affiliates entered into the conspiratorial conduct.  Nor is mere ownership of the affiliate enough.") (citations omitted); *Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*, 2004 U.S. Dist. LEXIS 780, *7 (S.D.N.Y. Jan. 22, 2004) (holding that "[a]llegations of an affiliate relationship . . . are insufficient to hold defendants liable"); *Morin v. Trupin,* 747 F. Supp. 1051, 1062 (S.D.N.Y. 1990) (same).

Neither the Third-Party Amended Complaint nor the Proposed Second Amended Third-Party Complaint contains any factual assertions of actionable conduct against Respect Auto II.  *See generally* Proposed Second Amended Third-Party Complaint.   Third-Party Plaintiffs' Proposed Second Amended Complaint simply states that Respect Auto I and Respect Auto II are affiliates, coupled with allegations proposing to add Respect Auto II to the list of entities that Third-Party

---

[6] Northern Broadway is not a party to this motion so Movants will not consider Third-Party Plaintiffs' request to add Northern Broadway in this Memorandum of Law.

Plaintiffs speculate may have benefitted, directly or indirectly, from alleged transfers of assets from the Debtor by Letsios or other managers of the Debtor.  *See* Proposed Second Amended Third-Party Complaint at ¶¶ 69-72, 76, 92, 107, 108, 130, 142.

Third-Party Plaintiffs' other assertion in support of adding Respect Auto II as a third-party defendant is that Respect Auto II is an "entity formed, owned and operated by Marciano to acquire the assets of [Debtor] in the bankruptcy."  *See id.* at ¶ 92.  Once again, Third-Party Plaintiffs ignore the facts that: (a) the sale of Debtor assets to Respect Auto II was approved by the Bankruptcy Court as an arms'-length transaction entered into in good faith and in the best interests of the Debtor and its creditors (Order dated August 10, 2019, Dkt. No. 183 in the Bankruptcy Case); (b) the Court approved the conditioning of the closing of the asset sale on relocating the Debtor's operations from an Avdoulos property to the Triangle Property at Respect Auto II's expense (Stipulation and Order dated September 30, 2019, Dkt. No. 230); and (c) Third-Party Plaintiffs had every opportunity to contest the referenced transaction and findings but did not do so – indeed agreeing to cooperate with the sale and attending the closing of the sale (*see* discussion and docket entry references at pgs. 5-6, *supra*).

Third-Party Plaintiffs' attempt to challenge and undermine the court-ordered sale with which they cooperated, in an attempt to survive dismissal of their claims against Movants, is blatantly improper and should not be countenanced.  *See* Proposed Second Amended Third-Party Complaint at ¶ 92.   These facts plainly show that the requested amendment to add Request Auto II as a third-party defendant would be futile, unproductive, and unlikely to survive a motion to dismiss within the meaning of applicable case law.  *E.g.*, *Albany Ins. Co. v. Esses, supra,* 831 F.2d at 45 (2d Cir. 1987); *Balintulo v. Ford Motor Co*., *supra,* 796 F.3d at 164-65 (2d Cir. 2015).

ii.   <u>The Request for Factual Amendments Should Be Denied</u>

Other than adding Respect Auto II to the Third-Party Complaint as an affiliate of Respect Auto I, Third-Party Plaintiffs allege no new conduct on the part of Movants apart from the insertion of additional conclusory phrases and Third-Party Plaintiffs' revelation that the gravamen of their claims against Movants is an attack on the Court-approved sale of Debtor assets to Respect Auto II as an arms'-length transaction.    Third-Party Plaintiffs' amendments add no specificity to the previous allegations and, as admitted in their Memorandum of Law, raise no new claims or legal theories.  *See* Third-Party Plaintiffs' Memorandum at pg. 26.

As with the First Amended Third-Party Complaint, the proposed pleading contains speculative allegations (unsupported by any specified conduct) purporting to lump Movants into lists of persons or entities who Third-Party Plaintiffs speculate may have somehow benefitted, perhaps indirectly, from alleged diversions of Debtor property (*e.g.*, Proposed Second Amended Third-Party Complaint ¶¶ 69 and 72) --  all while simultaneously identifying the alleged recipients of such diversions (Valley and now Northern Broadway) as entities that were "owned" and "managed" by Nikolaos Letsios (*e.g.*, *id.* ¶¶ 61-63).

The proposed pleading likewise continues to identify the management team of the Debtor "Letsios, Marina Letsios, Bebry and/or Papantoniou" as the only people who directly engaged in alleged acts of diverting Debtor property (*id.*  ¶¶ 66, 67, 96, 98, 101 and 102), but now proposes to insert conclusory phrases (with no supporting facts) that these managers of the Debtor acted with unspecified "guidance" or "advice" of Mr. Marciano (*e.g.*, *id.* ¶¶ 80, 83 and 85-87).   As with the First Amended Third-Party Complaint, these phrases are simply "formulaic recitation[s] of elements," and mere "labels and conclusions" and not "well-pleaded facts" as required to "permit the court to infer more than the mere possibility of misconduct" within the meaning of *Bell Atl. Corp v. Twombly, supra,* 550 U.S. at 555-56 (2007) and *Ashcroft v. lqbal, supra,* 556 U.S. at  675, 678-679 (2009).

25

The only non-conclusory conduct ascribed to Movants in the Proposed Second Amended Complaint is the receipt of the leasehold interest in the Triangle Property (approved as a condition of the sale). (*id.* at ¶¶ 79-80).  As set forth in Point I b., *supra*, concerning the First Amended Third-Party Complaint, allowing Third-Party Plaintiffs to proceed against Movants on such allegations would circumvent the bankruptcy process, usurp the Trustee's authority and undermine the court-approved asset sale.

Most importantly, Third-Party Plaintiffs have failed to demonstrate how their proposed amendments would cure the fact that their claims against the Movants are derivative and, therefore, would not survive this motion to dismiss.  *See Copeland ex rel. NBTY, Inc. v. Rudolph,* 160 F. App'x 56 (2d Cir. 2005) (affirming the district court's decision to deny leave to amend the complaint because the moving party "failed to demonstrate that they would be able to amend their consolidated derivative complaint in a manner that would survive dismissal").  Consequently, this Court must deny Third-Party Plaintiffs' Cross-Motion for Leave to File a Second Proposed Third-Party Complaint as futile.

b.  Third-Party Plaintiffs' Cross-Motion is Made in Bad Faith

Motions to amend should be denied as having been made in "bad faith" when the moving "party is seeking leave solely to gain a tactical advantage, or for some other improper purpose."  *Diaz v. Shanklin Corp.*, No. 16-cv-2332(ADS)(AYS), 2017 U.S. Dist. LEXIS 77410, at *16 (E.D.N.Y. May 19, 2017) (quoting *Adams v. City of New York,* 993 F. Supp. 2d 306, 322 (E.D.N.Y. 2014)).

Third-Party Plaintiffs' proposed new allegations highlight the fact that the gravamen if their claims against Movants is to challenge and undermine the Court's approval of the asset sale as an arms'-length transaction entered into in good faith. (*See, e.g.,* Proposed Second Amended Third-Party Complaint at ¶ 92) Third-Party Plaintiffs now seek to pursue claims against Respect Auto I and Mr. Marciano as a representative of Respect Auto I (and to bring claims against Respect Auto II) that either belong to the Debtor or were purchased by Respect Auto II in the Asset Purchase Agreement,

26

dated July 31, 2019.  (*See* Dkt. Nos. 176-3 and 230 in the Bankruptcy Case)  Completely ignoring

that claims for allegedly looting the Debtor and driving it into bankruptcy belong to the Trustee for

the benefit of the estate and creditors Third-Party Plaintiffs are attempting to benefit twice: both as

creditors of the Debtor and guarantors, based on Avdoulos' pre-petition guarantees of Debtor

obligations.   Third-Party Plaintiffs are thus seeking to amend their pleading to obtain a tactical

advantage, which is plainly prohibited. *E.g.*, *Diaz v. Shanklin Corp.*, *supra,* 2017 U.S. Dist. LEXIS

77410, at *16 (E.D.N.Y. May 19, 2017).

      c.  <u>Third-Party Plaintiffs' Cross-Motion is Dilatory</u>

      Under the Supreme Court precedent of *Foman v. Davis,* "a party's dilatory motive is a

legitimate basis for a court's denying that party's motion to amend a pleading." *Am. Med. Assoc. v.*

*United Healthcare Corp.*, No. 00-CV-2800, 2006 U.S. Dist. LEXIS 93864, 2006 WL 3833440, at

*5 (S.D.N.Y. Dec. 29, 2006) (citing *Foman*, 371 U.S. at 182, 83 S. Ct. 227).  "When it appears that

leave to amend is sought in anticipation of an adverse ruling on the original claims . . . the court is

free to deny leave to amend."  *PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752 (S.D.N.Y. 1995)

(citing *Ansam Assocs., Inc. v. Cola Petroleum, Inc.,* 760 F.2d 442, 446 (2d Cir. 1985)); *see also*

*DISH Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 461 (E.D.N.Y. 2012) (same).

      Here it is clear that Third-Party Plaintiffs' request to further amend their already once-

amended pleading was motivated by their anticipation of an adverse ruling on Movants' motion to

dismiss the First Amended Third-Party Complaint, and not due to any newly discovered evidence.

*See Phx. Racing, Ltd. v. Lebanon Valley Auto Racing Corp.,* 53 F. Supp. 2d 199, 209 (N.D.N.Y.

1999) (stating that "[g]iven that the cross-motion came proximate to receiving Defendants'

dispositive motion, which undoubtedly prompted Plaintiffs to perform additional legal research, it

strongly appears that Plaintiffs cross-moved to amend . . . reacting to newly discovered law, not

newly discovered evidence.  As noted above, legal ignorance provides no excuse for delay.") (citing *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir. 1990); *PI, Inc. v. Quality Products, Inc*., 907 F. Supp. 752, 764 (S.D.N.Y. 1995).

All of the new allegations in Third-Party Plaintiffs' Proposed Second Amended Third-Party Complaint were available to Third-Party Plaintiffs  when the initial Third-Party Complaint was filed.  Accordingly, the request to make them now is belated and dilatory.  *See Dish Network L.L.C*., *supra,* 893 F. Supp. 2d at 461 (citing *Zubulake v. UBS Warburg LLC,* 231 F.R.D. 159, 162 (S.D.N.Y. 2005) (noting that "'leave to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading'").  There is no reason for these amendments other than a Hail-Mary attempt to temporarily survive dismissal and delay the Court's disposition of the action as against Movants.

d.  <u>Third-Party Plaintiffs' Cross-Motion is Intended to Create Undue Prejudice to Movants</u>

"In determining what constitutes prejudice, [the Second Circuit] considers whether the assertion of the new claim would: (i) require the opponent to expend additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute[.]" B*lock v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir. 1993) (citations and internal quotations omitted).  Moreover, "[t]he longer the period of an unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice."  *Id*.

As stated previously, these amendments are not only futile but proposed in bad faith.  Moreover, they are submitted exclusively in the hopes of curing legal deficiencies that were only brought to Third-Party Plaintiffs' attention by Movants' motion to dismiss.  Allowing Third-Party

Plaintiffs further time to make futile and conclusory amendments to their pleading would only further delay disposition of this action as against Movants and create additional expenditures.

Third-Party Plaintiffs had multiple opportunities to challenge the purchase from the Debtor's estate of all claims as against Respect Auto I for $155,000, the sale of Debtor assets to Respect Auto II for $800,000, and the court-approved conditioning of the closing of that sale on the relocation of the Debtor's showroom to the Triangle Property at Respect Auto II's expense. Although the Court determined that the Asset Sale Agreement was entered into after arms' length negotiations and in good faith, Third-Party Plaintiffs failed to raise any opposition until the present cross-motion to amend the pleadings. To the contrary, Third-Party Plaintiff Avdoulos actively participated in the sale transaction, including attending the closing.

For the Third-Party Plaintiffs to now mount an after-the-fact challenge to these transactions in the form of a Proposed Second Amended Third-Party Complaint is perforce dilatory, unduly delayed, and in bad faith, warranting denial of the Cross-Motion under *Block, supra*, 988 F.2d at 350.

## CONCLUSION

For all of the foregoing reasons, Third-Party Defendants Respect Auto Queens I, LLC and John Marciano (collectively, the "Movants") respectfully request that the Court enter an order:

(a) dismissing the First Amended Third-Party Complaint (Docket No. 26 in Adversary Proceeding No. 19-01070-nhl) as to Movants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure;

(b) dismissing with prejudice Third-Party Plaintiffs' Cross-Motion for Leave to File a Second Amended Third-Party Complaint (Docket No. 71); and

(c) granting to Movants such other and further relief as the Court may deem just and proper.


Dated:  New York, New York
        January 21, 2020

                                      **BARCLAY DAMON LLP**

                                      B y :  */s/ Robert K. Gross*
                                              Robert K. Gross
                                              Janice B. Grubin

                                       1270 Avenue of the Americas, Suite 501
                                       New York, New York
                                       (212) 784-5800 (phone)
                                       (212) 784-5774 (fax)
                                       Email: rgross@barclaydamon.com
                                              jgrubin@barclaydamon.com

                                       Attorneys for Third-Party Defendants Respect
                                       Auto Queens I, LLC and John Marciano, and for
                                       Respect Auto Queens II, LLC