**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NORTHERN BOULEVARD AUTOMALL, LLC, d/b/a LONG ISLAND CITY VOLKSWAGEN,<br><br>Debtor. | Case No 19-41398-nhl<br>Chapter 11 |
| RICHARD J. MCCORD, ESQ., as Chapter 11Trustee for the Estate of NORTHERN BOULEVARD AUTOMALL, LLC, d/b/a LONG ISLAND CITY VOLKSWAGEN,<br><br>Plaintiff,<br><br>-against-<br><br>5615 NORTHERN, LLC, 142 NORTH, LLC, 54 BWAY, LLC, DIO LONG, LLC, 2545 BORDEN, LLC, DIO NORTH, LLC, VALLEY MERRICK, LLC, and SPYRO AVDOULOS,<br><br>Defendants. | Adv. Pro. No. 1-19-01070-nhl |
| 5615 NORTHERN, LLC, 142 NORTH, LLC, 54 BWAY, LLC, DIO LONG, LLC, 2545 BORDEN, LLC, DIO NORTH, LLC, VALLEY MERRICK, LLC, and SPYRO AVDOULOS,<br><br>Third-Party Plaintiffs,<br><br>-against-<br><br>NIKOLAOS LETSIOS a/k/a NICK LETSIOS, MARINA LETSIOS, JANET BEBRY, GEORGE S. PAPANTONIOU, VALLEY AUTO SHOW, LLC, JOHN MARCIANO, RESPECT AUTO QUEENS I, LLC, STEVAN H. LABONTE and LABONTE LAW GROUP PLLC<br><br>Third-Party Defendants. | **MEMORANDUM OF LAW OF DEFENDANTS/THIRD-PARTY PLAINTIFFS 5615 NORTHERN, LLC, 142 NORTH, LLC, 54 BWAY, LLC, DIO LONG, LLC, 2545 BORDEN, LLC, DIO NORTH, LLC, VALLEY MERRICK, LLC, AND SPYRO AVDOULOS, IN OPPOSITION TO THIRD-PARTY DEFENDANT GEORGE S. PAPANTONIOU SUPPLEMENTAL FILING IN SUPPORT OF <u>MOTION TO DISMISS</u>** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ iii-v

PRELIMINARY STATEMENT …………................................................................ 1

STATEMENT OF FACTS …………………………………………………………...…… 2

ARGUMENT ...............................................................................…………..... 3

    I.   THIRD-PARTY PLAINTIFFS
        HAVE STANDING TO PURSUE THEIR CLAIMS
        BECAUSE THEY ARE DIRECT CLAIMS THAT SEEK
        TO REDRESS INDIVIDUALIZED HARMS ................................................. 3

        (A) Third Causes of Action by Avdoulos Against Against Bebry, Mrs. Letsios, and
            Papantoniou for Breach of Fiduciary Duty ……………….................................... 4

        (B) Fourth Cause of Action by Avdoulos Against the Letsios Parties and Papantoniou For
            Fraud and Constructive Fraud …………........................................................... 5

        (C) Sixth Cause of Action Against by Avdoulos Against the Letsios Parties and
            Papantoniou for Aiding and Abetting Breach of Fiduciary Duty ……………….... 6

        (D) Ninth Cause of Action by Avdoulos Against All Third-Party Defendants for Civil
            Conspiracy ................................................................................................ 6

        (E) Tenth Cause of Action by Avdoulos Against All Third-Party Defendants for
            Indemnification .......................................................................................... 7

        (F) Eleventh Cause of Action by Third-Party Plaintiffs Against All Third-Party
            Defendants for Contribution ........................................................................ 7

        (G) Thirteenth Cause of Action by Third-Party Plaintiffs Against the Letsios Parties and
            Papantoniou for Deceit ............................................................................... 8

    II.  THE AMENDED THIRD-PARTY COMPLAINT
        STATES CLAIMS FOR RELIEF ................................................................... 8

        (A) Third Causes of Action by Avdoulos Against Against Bebry, Mrs. Letsios, and
            Papantoniou for Breach of Fiduciary Duty ……………….................................. 11

(B) Fourth Cause of Action by Avdoulos Against the Letsios Parties and Papantoniou For Fraud and Constructive Fraud ………........................................................................ 12

(C) Sixth Cause of Action Against by Avdoulos Against the Letsios Parties and Papantoniou for Aiding and Abetting Breach of Fiduciary Duty ………………….. 14

(D) Ninth Cause of Action by Avdoulos Against All Third-Party Defendants for Civil Conspiracy ................................................................................................................ 15

(E) Tenth Cause of Action by Avdoulos Against All Third-Party Defendants for Indemnification ......................................................................................................... 17

(F) Eleventh Cause of Action by Third-Party Plaintiffs Against All Third-Party Defendants for Contribution ...................................................................................... 20

(G) Thirteenth Cause of Action by Third-Party Plaintiffs Against the Letsios Parties and Papantoniou for Deceit .............................................................................................. 20

III.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIRD-PARTY PLAINTIFFS' CLAIMS ............................. 21

(A) The Court Has Subject Matter Jurisdiction Because the Third-Party Claims are Part of a "Core Proceeding" as They Arose In NBA's Bankruptcy .................... 21

(B) The Court Has Subject Matter Jurisdiction Because the Third-Party Claims are "Intertwined" with NBA's Bankruptcy ................................................................ 23

CONCLUSION ........................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Albany-Plattsburgh United Corp. v. Bell*,
　　307 A.D.2d 416  (3d Dep't 2003) ....................................................................... 3

*Ashcroft v. Iqbal*,
　　556 U.S. 662  (2009) ....................................................................................... 8,9

*Bell Atlantic Corp. v. Twombly*,
　　550 U.S. 544 (2007) ....................................................................................... 8,9

*Bethpage Fed. Credit Union v. Town of Huntington (In re Joe's Friendly Serv. & Son, Inc.)*,
　　Nos. 8-14-70001-reg, 8-14-70002-reg, 8-16-8035-reg, 2020 Bankr. LEXIS 1562 (Bankr.
　　E.D.N.Y. June 11, 2020) ............................................................................ 21, 24

*Blanco v. Polanco*,
　　116 A.D.3d 892 (2d Dep't 2014) ..................................................................... 15

*Ceribelli v. Elghanayan*,
　　990 F.2d 62 (2d Cir. 1993) ................................................................................ 3

*City of NY v. Lead Indus. Assn.*,
　　222 A.D.2d 119 (1st Dept. 1996) ..................................................................... 17

*Dole v. Dow Chem. Co.*,
　　30 N.Y.2d 143 (1972) ..................................................................................... 18

*EBC 1, Inc. v. Goldman, Sachs & Co.*,
　　5 N.Y.3d 11 (2005) ......................................................................................... 11

*Equitable Life Assur. Soc'y of U.S. v. Werner*,
　　286 A.D.2d 632 (1st Dep't 2001) ..................................................................... 18

*Gelmin v. Quicke*,
　　224 A.D.2d 481 (2d Dept. 1996) ..................................................................... 20

*Gjuraj v. Uplift El. Corp.*,
　　110 A.D.3d 540 (1st Dept 2013) ........................................................................ 3

*Guzman v. Haven Hous. Dev. Fund Co.*,
　　69 N.Y.2d 559 (1987) ..................................................................................... 18

*Henry v. Brenner*,
　　271 A.D.2d 647 (2d Dept. 2000) ..................................................................... 20

*In re Jacoby & Meyers—Bankruptcy LLP*,
    No. 15-CV-7144 (RA), 2017 WL 4838388 (S.D.N.Y. Oct. 25, 2017) ........................... 24

*In re Verrazano (In re Verrazano Holding Corp.*,
    (Bankr. E.D.N.Y. 1988) ................................................................................ 23

*Kaufman v. Cohen*,
    307 A.D.2d 113, 125, 760 N.Y.S.2d 157 (1st Dept. 2003) ............................................ 14

*Kirschenbaum v. United States DOL (In re Robert Plan Corp.)*,
    777 F.3d 594  (2d Cir. 2015) ....................................................................... 21

*Lama Holding Co. v. Smith Barney, Inc.*,
    88 N.Y.2d 413 (1996) ................................................................................ 12

*Mas v. Two Bridges Assocs. by Nat. Kinney Corp.*,
    75 N.Y.2d 680 (1990) ...................................................................... 17, 18, 19

*McDermott v. City of New York*,
    50 N.Y.2d 211 (1980) ................................................................................ 18

*Morris v. Rochdale Vil., Inc.*,
    2011 N.Y. Slip Op. 33315[U] (Sup. Ct., Queens County 2011) .................................... 20

*Mullin v. WL Ross & Co. LLC*,
    173 A.D.3d 520 (1st Dep't 2019) ................................................................... 11

*O'Neill v. Ithaca Coll.*,
    56 A.D.3d 869 (3d Dep't 2008) ..................................................................... 20

*Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola*,
    134 N.Y. 461 (1892) ................................................................................. 18

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013) …………………………………………………………... 9

*Raquet v. Braun*,
    90 N.Y.2d 177 (1997) ...................................................................... 18, 19, 20

*Ross v. Louise Wise Services, Inc.*,
    8 N.Y.3d 478 (2007) ................................................................................. 11

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ................................................................................... 9

*Taub v. Taub (In re Taub)*,
    413 BR 81 (Bankr. E.D.N.Y. 2009) ................................................................................ 21

**<u>Statutes</u>**

28 U.S.C. § 157 .................................................................................................................... 23, 24

Defendants-third-party plaintiffs 5615 NORTHERN, LLC ("5615 Northern"), 142 NORTH, LLC ("142 North"), 54 BWAY, LLC ("54 Broadway"), DIO LONG, LLC ("Dio Long"), 2545 BORDEN, LLC ("2545 Borden"), DIO NORTH, LLC ("Dio North"), VALLEY MERRICK, LLC ("Valley Merrick"), and SPYRO AVDOULOS ("Avdoulos", and together with 5615 Northern, 54 Broadway, Dio Long, 2545 Borden, Dio North and Valley Merrick, the "Landlord Entities" or "Third-Party Plaintiffs"), by its undersigned attorneys, hereby submits the following response to George S. Papantoniou's ("Papantoniou") Joinder in support of Third-Party Defendants' Nikolaos Letsios ("Mr. Letsios"), Marina Letsios ("Mrs. Letsios"), and Janet Bebry's ("Bebry", and together with Mr. Letsios and Mrs. Letsios, the "Letsios Parties") motion to dismiss the Landlord Entities' First Amended Third-Party Complaint ("Motion") (Dkt. 60-62).[1]

## PRELIMINARY STATEMENT

Papantoiou's Joinder is part of the latest attempt by the third-party defendants in this action to conflate conduct related to Northern Boulevard Automall, LLC ("NBA" or "Debtor") that may have ultimately harmed NBA, with the direct injuries sustained by the Third-Party Plaintiffs. To be clear, while certain conduct by Papantoniou and other third-party defendants harmed both NBA and Third-Party Plaintiffs, *the Third-Party Plaintiffs seek only to recover for the harms they have suffered directly*, not those suffered by NBA. At bar, the claims against Papantoniou and the Letsisos Parties would not have arisen but for Third-Party Defendants' bad acts, which ultimately drove NBA into bankruptcy. However, this does not mean that the Third-Party Plaintiffs seek to redress harms to NBA. Rather, the Third-Party Plaintiffs seek damages for injuries particular to them that are the *result of the same course of conduct* by Papantoniou and the Letsisos Parties that

---

[1]     Citations to "Dkt. _" refer to documents filed in this adversary proceeding, styled *Richard J. McCord, Esq., as Chapter 7 Trustee of Northern Boulevard Automall, LLC, d/b/a Long Island City Volkswagen v. 5615 Northern LLC, 142 North LLC, 54 Bway LLC, Dio Long LLC, 2545 Borden LLC, Dio North LLC, Valley Merrick LLC and Spyro Avdoulos*, Adv. Pro. No. 19-01070-nhl.

both drove NBA into bankruptcy *and* caused the Landlord Entities' damages.  The third-party claims asserted in this adversary proceeding would not have been brought, but for NBA's bankruptcy, which was caused by third-party defendants' bad acts, which are also detailed in the Trustee's claims asserted against Letsios in the Adversary Proceeding.  Since there are overlapping facts, all of the claims should be tried before this Court, where all parties are joined, to ensure consistent factual findings and decisions.

As set forth below, the Amended Third-Party Complaint sets out a well-pleaded scheme that ultimately resulted in individualized harm to the Third-Party Plaintiffs in the form of legal fees incurred by Third-Party Plaintiffs, harm to Avdoulos' credit, and creditors seeking to recover sums from one or more Third-Party Plaintiffs, and personally guarantees by Avdoulos that have been triggered by NBA's bankruptcy.  Accordingly, as set forth more fully below, the motion to dismiss should be denied because (i) Third-Party Plaintiffs have standing to assert their claims for the individualized harm they have suffered, which is separate and distinct form the harm suffered by NBA; (ii) Third-Party Plaintiffs  have stated well-pleaded claims for relief; and (iii) the Court has subject matter jurisdiction over Third-Party Plaintiffs' claims.

## **STATEMENT OF FACTS**

The facts referenced below are based on the Amended Third-Party Complaint (Dkt. 26, the "Amended TPC"), documents filed on the docket in these bankruptcy proceedings,[2] the Third-Party Plaintiffs' opposition to the supplemental filing by the Plaintiff, Trustee Richard J. McCord, ("Trustee"), and the December 7, 2022 declarations of Spyro Avdoulos ("Avdoulos Dec.") and George Sitaras, Esq. ("Sitaras Dec.")

---

[2]    The Landlord Entities have also cross-moved to file a Second Amended Third-Party Complaint as part of their opposition to the motion to dismiss by Third-Party Defendants John Marciano and Respect Auto Queens I, LLC.  (Dkt. 71).

## ARGUMENT

Papantoniou's Joinder incorporates the Letsios Parties' Motion by reference. Accordingly, this opposition to Papantoniou's Joinder incorporates the Landlord Entities' opposition to that Motion ("Opposition") by reference.  (Dkt. 71.)

## POINT I

### THIRD-PARTY PLAINTIFFS
### HAVE STANDING TO PURSUE THEIR CLAIMS BECAUSE THEY
### ARE DIRECT CLAIMS THAT SEEK TO REDRESS INDIVIDUALIZED HARMS

In the Amended TPC, Third-Party Plaintiffs have asserted seven causes of action against Papantoniou. Each cause of action is based upon unique harms suffered by Third-Party Plaintiffs due to the actions of Papantoniou in concert with the Letsios Parties.  While Papantoniou's conduct may have also caused harm to the Debtor, none of the claims asserted by Third-Party Plaintiffs seek relief on behalf of the Debtor.  Because such causes of action are not derivative claims, Third-Party Plaintiffs have standing to assert the causes of action contained in the Amended TPC.

In determining whether a claim is derivative or individual, "[t]he pertinent inquiry is whether the thrust of the plaintiff's action is to vindicate his personal rights as an individual and not as a stockholder on behalf of the corporation." *Albany-Plattsburgh United Corp. v. Bell*, 307 A.D.2d 416, 419, 763 N.Y.S.2d 119 (3d Dep't 2003) (collecting cases).  Where harm is caused to an individual member, that member may bring their claims through  direct action, even where derivative claims may also be maintained.  *Gjuraj v. Uplift El. Corp.*, 110 A.D.3d 540, 540 (1st Dept 2013).  "Under New York law, a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder,  whether or not the corporation may also bring an action." *Ceribelli v. Elghanayan*, 990 F.2d 62, 63-64 (2d Cir. 1993) (citations omitted).

An examination of each of the causes of action asserted against Papantoniou reveals that the harms complained of by the Third-Party Plaintiffs *are unique to them* and not brought on behalf of the Debtor. Accordingly, they are not derivative claims and the Third-Party Plaintiffs have standing to pursue their claims.

A.    **Third Cause of Action by Avdoulos Against Bebry, Mrs. Letsios, and Papantoniou for Breach of Fiduciary Duty**

The third cause of action in the Amended TPC is by Avdoulos for breach of fiduciary duty as against Papantoniou (as well as Mrs. Letsios and Bebry). (Dkt. 26 at ¶¶ 129-149.) Papantoniou was appointed by Mr. Letsios to manage the Debtor. (Dkt. 26 at ¶ 39.) Papantoniou was responsible for executing tasks and responsibilities delegated to him by Mr. Letsios that included, among other things, entering sale and lease transactions upon the books and records of NBA, collecting and disbursing funds, processing leases, sale agreements, credit applications and retail installments contracts, and overseeing and implementing the floor plan financing and dealing with creditors of NBA. (Dkt. 26 at ¶ 128.)

Avdoulos relied upon and trusted Papantoniou and others to execute their responsibilities with fidelity and loyalty to the Debtor and himself, as a non-active, non-managing member. (Dkt. 26 at ¶¶ 30, 76-88, 107, 129-145.) Papantoniou owed NBA, and its members, the utmost good faith, loyalty and fidelity in their respective dealings with NBA and its non-managing member, who personally guaranteed the VCI floor plan. (Dkt. 26 at ¶¶ 52, 129.) Papantoniou and other third-party defendants breached their fiduciary duties by making false sales contracts and loan applications, engaging in a "double flooring" scheme, transferring funds to entities owned or controlled by Mr. Letsios, including approximately $938,261.10 from the Debtor, and creating the documents to required to effectuate the Fraudulent Loans, all of which directly harmed and damaged Avdoulos, whose creditworthiness has been destroyed. (Dkt. 26 at ¶¶ 65-69, 80-89.) To

be clear, the duty alleged in the Amended TPC is the fiduciary duty running from Papantoniou to Avdoulos and not the fiduciary duty owed to the Debtor.

**B.    Fourth Cause of Action by Avdoulos Against the Letsios Parties and Papantoniou For Fraud and Constructive Fraud**

The fourth cause of action in the Amended TPC is by Avdoulos as against the Letsios Parties and Papantoniou for fraud and constructive fraud.  (Dkt. 26 at ¶¶ 150-164.)  The Amended TPC alleges, in detail, all of the ways in which Papantoniou and the Letsios Parties perpetrated frauds against Avdoulos and the Landlord Entities causing them damage.  Specifically, Third-Party Plaintiffs have alleged particularized damages and injuries that cannot be claimed by Debtor or any other creditor of Debtor, such as the liability for the four fraudulent vehicle loans obtained in Avdoulos' name, secured by a single vehicle that was never given to him.  (Dkt. 26 at ¶¶ 80-88.) Indeed, because the proceeds of the four vehicle loans were kept by the Debtor, the Debtor suffered no harm, while Avdoulos, on the other hand, owes approximately $200,000 for vehicle loans to four separate lenders.  Surely, the Debtor has no claim or standing to recover for the vehicle loans, as the harm is particular to Avdoulos.  Moreover, the Trustee has no standing to assert a claim for the negative effect on Avdoulos' credit. (Dkt. 26 at ¶¶ 89-90, 121, 132, 152, 206.)

Similarly, the claims arising from the forged "Rent Concession Agreement" are particular to the Third-Party Plaintiffs.  The Trustee has used the forged "Rent Concession Agreement" as a sword to pursue claims against both Avdoulos and the Landlord Entities to recover no less than $3,163.080.84 in alleged rent overcharges.  (Dkt. 1.)  However, if the Third-Party Plaintiffs defeat the Trustee's claims or establish that the Rent Concession Agreement is a forgery, they will have incurred substantial costs and expenses in doing so (in particular, hundreds of thousands in legal fees) that would be recoverable by the Third-Party Plaintiffs from those responsible for the forgery, *i.e.*, Papantoniou and others, who acted in concert with Mr. Letsios, as alleged in the Amended

TPC.  The Trustee has no standing to recover damages incurred by the Third-Party Plaintiffs for having defended the Trustee's claims, but the Third-Party Plaintiffs would have a claim against the person or people who forged the purported Rent Concession Agreement and caused their damages.

### C.    Sixth Cause of Action by Avdoulos Against the Letsios Parties and Papantoniou for Aiding and Abetting Breach of Fiduciary Duty

The sixth cause of action in the Amended TPC is by Avdoulos against the Letsios Parties and Papantoniou for aiding and abetting breach of fiduciary.  (Dkt. 26 at ¶¶ 182-186.)  As with the causes of action for breach of fiduciary duty, the fiduciary duties that Papantoniou aided and abetted the Letsios Parties in breaching were duties running from Papanonio (and others) to Avdoulos.  As explained above, these breaches of fiduciary duty are particular and unique to Avdoulos and are not derivative actions to be brought on behalf of the Debtor.  Avdoulos, as a non-managing member of the Debtor, has rights to pursue Mr. Letsios to recover damages arising from his breach of his duties of loyalty and care, and if Papantoniou substantially assisted Mr. Letsios in violating his duties to Avdoulos, then Avdoulos is entitled to pursue him for aiding and abetting.  Accordingly, Avdoulos has rights to pursue Papantoniou and the Letsios Parties arising from their breaches of duties of loyalty and care, and if Mr. Letsios substantially assisted others in violating their duties to Avdoulos, then Avdoulos is entitled to pursue him for aiding and abetting the remaining Letsios Parties and Papantoniou.

### D.    Ninth Cause of Action by Avdoulos Against All Third-Party-Defendants for Civil Conspiracy

The ninth cause of action in the Amended TPC is for civil conspiracy. (Dkt. 26 at ¶¶ 204-207.)  The same arguments regarding the unique and particular nature of the harms and causes of action that applies to the underlying torts, namely, breach of fiduciary duty, fraud and constructive

fraud perpetrated against Third-Party Plaintiffs applies to this cause of action. Accordingly, for the reasons set forth above, Third-Party Plaintiffs have standing to assert this claim.

### E. Tenth Cause of Action by Avdoulos Against All Third-Party Defendants for Indemnification

The tenth cause of action in the Amended TPC is for indemnification. (Dkt. 26 at ¶¶ 208-214.) The Letsios Parties failed to address this cause of action in their arguments on standing, which are incorporated into Papantoniou's Joinder by reference. However arguing that Third-Party Plaintiffs have no standing to pursue this claim would be futile and circular as this cause of action seeks indemnification for the losses suffered by Third-Party Plaintiffs as a result of the claims brought by the Trustee. It would be nonsensical to assert that standing to assert indemnification for such losses by Third-Party Plaintiffs would also rest with the Trustee. Accordingly, any loss claimed by the indemnification cause of action, by definition, is unique and particular to the Third-Party Plaintiffs, and Third-Party Plaintiffs have standing to assert the tenth cause of action for indemnification.

### F. Eleventh Cause of Action by Third-Party Plaintiffs Against All Third-Party Defendants for Contribution

The eleventh cause of action in the Amended TPC is for contribution. (Dkt. 26 at ¶¶ 215-216.) It alleges that if the Third-Party Plaintiffs are held liable for any claim or damages based on the Trustee's complaint, third-party defendants must reimburse the Third-Party Plaintiffs. The harms suffered by Third-Party Plaintiffs as a result of damages imposed by the Court based on the Trustees complaint against Third-Party Plaintiffs would axiomatically be unique and particular to Third-Party Plaintiffs. Such claims are necessarily direct in nature, not derivative, and as such, Third-Party Plaintiffs have standing to assert same.

Accordingly, as it is clear that all of the causes of action alleged by Third-Party Plaintiffs are direct and not derivative, no prelitigation demand was required. Third-Party Plaintiffs have proper standing and the motion by the third-party defendants and Trustee, must be denied.

> **G.    Thirteenth Cause of Action by Third-Party Plaintiffs Against the Letsios Parties and Papantoniou for Deceit**

The thirteenth cause of action in the Amended TPC is for deceit. (Dkt. 26 at ¶¶ 230-235.) It alleges that Papantoniou and others made intentionally false statements to third-parties, including, but not limited to, the use of the forged Rent Concession Agreement, in order to deceive others to the detriment of Third-Party Plaintiffs. The harms suffered by Third-Party Plaintiffs are unique and particular to them, such as the damage to Avdoulos' creditworthiness and his liability under personal guarantees executed by him. Such claims are necessarily direct in nature, not derivative, and as such, Third-Party Plaintiffs have standing to assert the same.

Accordingly, as it is clear that all of the causes of action alleged by Third-Party Plaintiffs are direct and not derivative, no prelitigation demand was required. Third-Party Plaintiffs have proper standing and the motion by the Letsios Parties, joined by Papantoniou, must be denied.

<div align="center">

**POINT II**

**THE AMENDED THIRD-PARTY COMPLAINT STATES CLAIMS FOR RELIEF**

</div>

To survive a motion to dismiss the complaint must contain "sufficient factual matter," which is accepted as true, in order to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009); *quoting, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955 (2007). Factual content must be sufficient to allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *citing, Twombly*, 550 U.S. at 556. The application of the plausibility standard is context specific and

requires "assessing the allegations of the complaint as a whole." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 719 (2d Cir. 2013) (internal citations omitted).

However, the "plausibility standard" is not a "probability requirement." *Iqbal*, 556 U.S. at 678; *citing*, *Twombly*, 550 U.S. at 556. A well-pleaded complaint will be permitted to proceed to discovery even if the court believes that actual proof of the facts as plead is improbable and "that a recovery is very remote and unlikely." *Id.*; *quoting*, *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). A complaint is well-pleaded if the allegations raise a "reasonable expectation" that evidence supporting the complaint will be found in discovery. *Twombly*, 550 U.S. at 556.

As set forth below, a holistic assessment of the Amended TPC details a well-pleaded scheme to defraud Avdoulos, as the primary investor and non-managing member of the Debtor, and whose creditworthiness and personal guaranty backstopped the Debtor's operations, including, most notably, the floor-plan financing that allowed the Debtor to operate as a Volkswagen franchisee. (Dkt. 26 at ¶¶ 71-79, 121, 128, 153, 185, 205-206.) Papantoniou and others were complicit in, and provided substantial assistance to, the Respect Defendants in establishing a new dealership at the 53-21 Property, knowing that Avdoulos, as guarantor, would be called upon to pay the debts of Debtor, while simultaneously transferring the Debtor's assets, cash and a valuable lease for the 53-21 Property as well as the used car business that operated from that location, all of which were paid for through the fraudulent conveyances orchestrated by Mr. Letsios and his business partners, Marciano, through the Respect entity. (Dkt. 26 at ¶¶ 71-79, 121, 128, 153, 185, 205-206.) As NBA's manager hand-picked by Mr. Letsios, Papantoniou was instrumental in executing this scheme. (Dkt. 25 at ¶ 39.)

In essence, Papantoniou assisted the Letsios Parties in looting the Debtor's assets, trading upon Avdoulos' creditworthiness and goodwill for their benefit, and the benefit of a new business

partner, John Marciano ("Marciano"), who operated through Respect Auto Queens I, LLC ("Respect I").  (Dkt. 26 at ¶¶ 65, 76-77.)  Third-Party Plaintiffs have pleaded the existence of a broad agreement between Mr. Letsios and the Respect Defendants to take over the assets of the Debtor for no consideration, and essentially cut-out Avdoulos from the operation of the Volkswagen franchise, which Papantoniou assisted in, while leaving Avdoulos with millions of dollars in personal liabilities, all of which Papantonious aided in the execution of.

The  Amended TPC alleges that Papanoniou was not only instrumental to the execution of the broad agreement between Mr. Letsios and the Respect Defendants to take over the assets of the Debtor for no consideration but was responsible for many of the frauds and breaches of fiduciary duties that were perpetrated against Avdoulos and the Landlord Entities.  (Dkt. 26 at ¶¶ 40, 65-69, 76-88, 107, 128-145.)   Papantoniou, *inter alia*: (a) concealed, omitted and/or misreported information on the books and records of the Debtor and failed to inform Avdoulos of the true nature of the transactions (Dkt. 26 at ¶¶ 77, 153, 160); (b) generated false financing documents and applications to support the "double flooring" scheme, wrongful diversion of the Debtor's funds to other entities owned or controlled by Mr. Letsios and his partners, and fraudulent purchase of vehicles made in Avdoulous's name without his knowledge (Dkt. 26 at ¶¶ 66-72, 77); and (c) concealed Mr. Letsios' side-dealings with Valley, Respect and/or John Marciano  (Dkt. 26 at ¶¶ 77, 132).

Finally, Papantoniou assisted Mr. Letsios in carrying out the Fraudulent Loans.  Bebry and Mrs. Letsios submitted four loan applications in Avdoulos' name to four lenders in connection with the purchase of the same vehicle, the proceeds of which were retained by the Debtor.  (Dkt. 26 at ¶¶ 80-84.)  Avdoulos received no benefit from the Fraudulent Loans.  Additionally, his

creditworthiness has been negatively impacted due to the Fraudulent Loans, and they have exposed him to personal liability.

Papantoniou substantially assisted Mr. Letsios in executing his scheme and his agreement with the Respect Defendants to loot and fraudulently convey the Debtor's assets to their affiliates, without consideration, in order to form a new VW dealership without Avdoulos, at Avdoulos' expense. As a result, Avdoulos is the subject of millions of dollars in claims as a guarantor of the VCI obligations and has been directly damaged by virtue of fraudulent loans obtained in Avdoulos' names mere weeks before Letsios caused the Debtor to file the bankruptcy. (Dkt. 26 at ¶¶ 65-74, 80-88.) Again, these harms are particular to Third-Party Plaintiffs, not NBA.

### A. Third Cause of Action by Avdoulos Against Bebry, Mrs. Letsios, and Papantoniou for Breach of Fiduciary Duty

The third cause of action in the amended TPC for breach of fiduciary duty is sufficiently pleaded. Avdoulos pleads "a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *EBC 1, Inc. v. Goldman, Sachs & Co.,* 5 N.Y.3d 11, 19, 799 N.Y.S.2d 170 (2005), *quoting, Restatement [Second] of Torts* § 874. Papantoniou, as NBA's manager, breached that duty, causing Avdoulos damages in the form of, among other things, exposure to millions of dollars in claims. More specifically, Papantoniou, with others, oversaw all of the financial affairs of the Debtor, which including entering sale and lease transactions in NBA's books and records, collecting and disbursing funds, processing leases, sale agreements, credit applications and retail installments contracts, and overseeing and implementing the floor plan financing and dealing with creditors of NBA. (Dkt. 26 at ¶¶ 77, 128.) Papantoniou, as manager, owed NBA and its members the utmost good faith, loyalty and fidelity in their respective dealings with NBA and its non-managing member, Avdoulos. *See, Mullin v. WL Ross & Co. LLC*, 173 A.D.3d 520, 522 (1st Dep't 2019) (holding that that "a fiduciary of a fiduciary is a fiduciary".)

Critically, the duty alleged in the Amended TPC is the fiduciary duty running from Papantoniou

(and others) to Avdoulos and not a fiduciary duty owed to the Debtor. The Amended TPC alleges

that they breached this duty to Avdoulos, causing Avdoulos significant damages.

Accordingly, Third-Party Plaintiffs have sufficiently pleaded the third cause of action for

breach of fiduciary duty, and as such, the motion to dismiss must be denied. Additionally, as

mentioned above, Third-Party Plaintiffs have filed a motion for leave to amend their third-party

complaint. The proposed Second Amended TPC corrects any alleged deficiencies in Third-Party

Plaintiffs' pleading. The proposed Second Amended TPC alleges sufficient facts to state a claim

for relief that is facially plausible.

### B.      Fourth Cause of Action by Avdoulos Against the Letsios Parties and Papantoniou For Fraud and Constructive Fraud

Under New York law, in order to recover in an action for fraud, a plaintiff must prove a (1)

misrepresentation or material omission of fact; (2) that was false and known to be false by the

defendant; (3) made for the purpose of deceiving the plaintiff; (4) justifiable reliance upon the

misrepresentation or material omission; and (5) injury. *Ross v. Louise Wise Services, Inc.*, 8 N.Y.3d

478, 489, 836 N.Y.S.2d 509 (2007); *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421,

646 N.Y.S.2d 76 (1996).  Fed. R. Civ. P. 9(b) requires that when alleging fraud, "a party must state

with particularity the circumstances constituting fraud" but that "malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally."

The fourth cause of action in the Amended TPC is for fraud and constructive fraud as

against Papantoniou and the Letsios Parties.  (Dkt. 26 at ¶¶ 150-164.)  The Amended TPC alleges,

in detail, all of the ways in which Papantoniou assisted the Letsios Parties in perpetrating frauds

against Avdoulos and the Landlord Entities causing them damage. Specifically, the TPC alleges

that Papantoniou and the Letsios Parties submitted four loan applications in Avdoulos' name to

four lenders in connection with the purchase of the same vehicle, the proceeds of which were retained by the Debtor. (Dkt. 26 at ¶¶ 80-84.) Additionally, his creditworthiness has been negatively impacted due to the Fraudulent Loans. After the loan applications were signed, the Letsios Parties used the applications to obtain multiple loans in the name of Avdoulos for based on a single VIN. (Dkt. 26 at ¶¶ 156.) Avdoulos would not have authorized the submission of the loan applications or agreed to the loans had he known the truth. (Dkt. 26 at ¶¶ 157.) Papantoniou was aware of the fraudulent vehicle loans and participated in the scheme to defraud Avdoulos. (Dkt. 26 at ¶¶ 158.)

As for the remaining Landlord Entities, the Amended TPC alleges that Papantoniou and others first forged Avdoulos' signature on the purported "Rent Concession Agreement" then presented it to third parties, including the Trustee, in an attempt to avoid paying the arrears. (Dkt. 26 at ¶¶ 159, 206, 218-223.) The forged document has exposed the Landlord Entities to millions of dollars in claims by the Trustee in the primary complaint in this adversary proceeding. (Dkt. 1; Dkt. 26 at ¶¶ 223-227.)

In addition, the Amended TPC alleges that from January 2017 through approximately December 2018, Papantoniou and others diverted NBA's assets to Valley, transferring $1,110,117.41 from NBA to Valley, without consideration or benefit to NBA. (Dkt. 26 at ¶¶ 59-60.) These funds were used to establish Valley as a dealership operated by Mr. Letsios and the Respect Defendants, and as such, the Letsios Parties directly or indirectly benefitted from them. (Dkt. 26 at ¶¶ 61-65.)

Accordingly, Third-Party Plaintiffs have sufficiently pleaded the fourth cause of action for fraud and constructive fraud, and as such, the motion to dismiss must be denied. Additionally, as mentioned above, Third-Party Plaintiffs have filed a motion for leave to amend their third-party

complaint.  The proposed Second Amended TPC corrects any alleged deficiencies in Third-Party Plaintiffs' pleading. The proposed Second Amended TPC alleges sufficient facts to state a claim for relief that is facially plausible.

**C.    Sixth Cause of Action by Avdoulos Against the Letsios Parties and Papantoniou for Aiding and Abetting Breach of Fiduciary Duty**

Under New York Law, the elements for aiding and abetting a breach of fiduciary duty are "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damages as a result of the breach." *Kaufman v. Cohen,* 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dept. 2003).   When examining Third-Party Plaintiffs' the Amended TPC as a whole, it is clear that Third-Party Plaintiffs have sufficiently pleaded each of these elements.

The Sixth Cause of Action of the Amended TPC alleges that Papantoniou and the Letsios Parties aided and abetted each other in their respective breaches of fiduciary duties.  (Dkt. 26 at ¶¶ 182-186.)  The Amended TPC alleges that they knew of each other's fiduciary duties, that they knowingly induced each other to participate in breaches of those duties, and that Avdoulos was damaged by such breaches.

The Amended TPC is replete with examples of inducements to breach their respective fiduciary duties. For instance, the Amended TPC alleges that from January 2017 through approximately December 2018, the Letsios Parties, and/or Papantoniou transferred funds from, and caused revenues and assets of NBA to be transferred to Valley, or for the benefit of Valley, in an amount not less than $1,110,117.41. (Dkt. 26 at ¶ 59.) It also alleges all of the details regarding the "double flooring" scheme to help finance Valley and stock its inventory.  (Dkt. 26 at ¶¶ 66-70.)  The Amended TPC also specifically describes the ways in which Papantoniou and the Letsios Parties procured the Fraudulent Loans in breach of their respective fiduciary duties to Avdoulos.

(Dkt. 26 at ¶¶ 80-89.)    The Amended TPC also discusses the Letsios Parties' respective involvement in the formation and forgery of the bogus Rent Concession Agreement, in breach of their respective fiduciary duties. (Dkt. 26 at ¶¶ 159-206.)

Paragraph 77 of the Amended TPC states that "Marina Letsios, Bebry and Papantoniou provided substantial assistance to Nick Letsios by, *inter alia*: (a) concealing, omitting and/or misreporting information on the books and records of NBA and failing to inform Avdoulos of the true nature of the transactions; (b) generating false financing documents and applications to support the "double flooring" scheme, wrongful diversion of NBA's funds to other entities, and fraudulent purchase of vehicles made in Avdoulous's name without his knowledge, and (c) concealing Nick Letsios's side-dealings with Valley, Respect and/or John Marciano."

Accordingly, Third-Party Plaintiffs have sufficiently pleaded the sixth cause of action for aiding and abetting breach of fiduciary duty, and as such, the motion to dismiss must be denied. Additionally, as mentioned above, Third-Party Plaintiffs have filed a motion for leave to amend their third-party complaint. The proposed Second Amended TPC corrects any alleged deficiencies in Third-Party Plaintiffs' pleading. The proposed Second Amended TPC alleges sufficient facts to state a claim for relief that is facially plausible.

### D.    Ninth Cause of Action by Avdoulos Against All Third-Party-Defendants for Civil Conspiracy

While civil conspiracy is not recognized in New York as an independent cause of action, New York law allows plaintiffs may plead the existence of a conspiracy so as to connect the actions of individual defendants as part of a common scheme to engage in an actionable, underlying tort. *Blanco v. Polanco*, 116 A.D.3d 892, 896, 986 N.Y.S.2d 151, 155 (2d Dep't 2014). Where such a conspiracy is alleged, three elements must be satisfied: (1) there must be a cognizable underlying

tort; (2) that tort must be coupled with an agreement between the conspirators regarding the tort; and (3) there must be an overt act in furtherance of the agreement. *Id.* (citations omitted).

Here, Third-Party Plaintiffs have clearly pleaded underlying torts, namely, breach of fiduciary duty, fraud and constructive fraud perpetrated against Third-Party Plaintiffs by Papantoniou (and the Letsios Parties).

As to the second element of conspiracy, the Amended TPC alleges facts with sufficient particularity to raise a reasonable inference that an agreement existed by and between Mr. Letsios, Marciano, and/or Respect for the commission of tortious acts against Third-Party Plaintiffs. Specifically, Mr. Letsios and the Respect Defendants entered into an agreement whereby they agreed to organize a new Volkswagen dealership and exclude Avdoulos, using the assets of the Debtor and using Avdoulos' creditworthiness (as a guarantor of the Debtor's floor plan with VCI) as well the credit extended by the Landlord Entities, which were owed substantial arrears under the leases as a result of Letsios causing the Debtor to stop paying rent entirely. (Dkt. 26 at ¶¶ 71-79, 205-206.)

The Amended TPC alleges multiple overt actions taken by Papantoniou and other Third-Party Defendants in furtherance of an agreement to commit fraud and/or breaches of fiduciary duties of loyalty and care, such as

1. Running up debts through "double flooring", i.e., receive financing twice from two floor-plan lenders for the same vehicle (Dkt. 26 at ¶¶ 6-70);

2. creating false business documents to obtain financing, including the "Rent Concession Agreement" (Dkt. 26 at ¶¶ 159, 206);

3.  submitting four loan applications in Avdoulos' name to four lenders in connection with the purchase of the same vehicle, the proceeds of which were retained by the Debtor (Dkt. 26 at ¶¶ 80-84); and

4.  purchasing a separate dealership using funds looted and diverted from Avdoulos and the Debtor.  (Dkt. 26 at ¶¶ 143-144, 161.)

As a result of the agreements, schemes and overt acts by Papantoniou, Mr. Letsios and the Respect Defendants were able to establish a new Volkswagen dealership with the looted assets that were fraudulently conveyed from the Debtor, at the expense and to the detriment of Avdoulos, whose creditworthiness and guarantees backstopped and supported the Debtor's operations.

Accordingly, Third-Party Plaintiffs have sufficiently pleaded the ninth cause of action for civil conspiracy, and as such, the motion to dismiss must be denied.  Additionally, as mentioned above, Third-Party Plaintiffs have filed a motion for leave to amend their third-party complaint. The proposed Second Amended TPC corrects any alleged deficiencies in Third-Party Plaintiffs' pleading. The proposed Second Amended TPC alleges sufficient facts to state a claim for relief that is facially plausible.

### E.      Tenth Cause of Action by Avdoulos Against All Third-Party Defendants for Indemnification

Third-Party Plaintiffs are entitled to common law indemnification from Papantoniou (and the Letsios Parties) because Third-Party Plaintiffs, through no wrongdoing of their own, have been alleged to be liable to another party, solely due to the actions of Papantoniou and others.

Indemnity is meant to equitably distribute of the losses caused by multiple defendants. *Mas v. Two Bridges Assocs. by Nat. Kinney Corp.*, 75 N.Y.2d 680, 690-91, 555 N.Y.S.2d 669, 675 (1990); *City of NY v. Lead Indus. Assn.*, 222 A.D.2d 119, 128 (1st Dept. 1996) (citation omitted). Indemnity has been granted in favor of the party "who, in fairness, ought not bear the loss, allowing

it to recover from the party actually at fault." *Mas*, 75 N.Y.2d at 690-91. Indemnity is appropriate when there is "a separate duty owed the indemnitee by the indemnitor (thus the indemnitee may recover for the wrong to it)", because of a great difference in the fault of the two tort-feasors, or because of disproportionate duties owed to the injured plaintiffs. *Id.* (citations omitted).

Indemnity permits shifting of loss where failing to do so "would result in the unjust enrichment of one party at the expense of the other." *Id.*; *citing*, *McDermott v. City of New York*, 50 N.Y.2d 211, 216-217, 428 N.Y.S.2d 643 (1980); *see also*, *Guzman v. Haven Hous. Dev. Fund Co.*, 69 N.Y.2d, 559, 568, 516 N.Y.S.2d 451 (1987); *Dole v. Dow Chem. Co.* 30 N.Y.2d 143, 152, 331 N.Y.S.2d 382 (1972). Generally, it is available in favor of one who is "held responsible solely by operation of law because of his relation to the actual wrongdoer." *Mas*, 75 N.Y.2d at 690. (citations omitted).

A separate duty owed to the indemnitee by the indemnitor that is  the foundation of a cause of action for indemnification. *Raquet v. Braun*, 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 240 (1997) (*citing*, *Mas*, 75 N.Y.2d at 690); *Equitable Life Assur. Soc'y of U.S. v. Werner*, 286 A.D.2d 632, 730 N.Y.S.2d 329, 330-31 (1st Dep't 2001) (the "key element of a common common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is 'a separate duty owed the indemnitee by the indemnitor.'"). There is no requirement for a duty running from the indemnitor to the injured party. "The duty that forms the basis for the liability arises from the principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him.'" *Raquet*, 90 N.Y.2d at 183, *quoting*, *Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola*, 134 N.Y. 461 (1892); *see*, *McDermott*, 50 N.Y.2d at 216-217. Indeed, "it is the independent duty which the wrongdoer owes to prevent the

other from becoming vicariously liable, and cast in damages, to the injured party that is the predicate for the indemnity action." *City of NY*, 222 A.D.2d at 125 (citations omitted). Furthermore, "it is not necessary that the indemnitee establish that the indemnitor ever has owed, or currently owes, it a separate duty apart from the duty to indemnify." *Id.* (citations omitted).

Here, Papantoniou (and the Letsios Parties) had independent duties not to forge documents, engage in fraud, or breach their fiduciary duties, are liable by virtue of their negligence and wrongdoing. Papantoniou helped forge Avdoulos' signature on the alleged "Rent Concession Agreement", whereafter Mr. Letsios caused it to be sent to the Trustee and others to make it appear as though the Landlord Entities received payments for rent that they were not entitled to, and/or to defeat the Landlord Entities' claims against Debtor for unpaid rent.  (Dkt. 26, ¶¶ 159. 206, 223-224.)  The Trustee's claims against Third-Party Plaintiffs are largely based upon the forged "Rent Concession Agreement."  (Dkt. 26, ¶ 225.)  Indeed, the Trustee seeks to recover from the Third-Party Plaintiffs the sum of $2,546,148.64 for rent payments between June 2016 and March 2019, less the sum of $26,000.00 per month during said time, based on the forged "Rent Concession Agreement."  (Dkt. 26, ¶ 226.)  Due to the fraudulent conduct, breaches of contract, and breaches of fiduciary duties by the Papantoniou and the Letsios Parties, Third-Party Plaintiffs are alleged to be liable to at least one third party, the Trustee.  Therefore, Papantoniou must indemnify the Third-Party Plaintiffs.  *Raquet*, 90 N.Y.2d at 183; *Mas*, 75 N.Y.2d at 690.  Accordingly, it is Papantoniou and the Letsios Parties who should have to pay any damages that may potentially be awarded to the Trustee. *Id.*

Accordingly, Third-Party Plaintiffs have sufficiently pleaded the tenth cause of action for indemnification, and as such, the motion to dismiss must be denied.  Additionally, as mentioned above, Third-Party Plaintiffs have filed a motion for leave to amend their third-party complaint.

The proposed Second Amended TPC corrects any alleged deficiencies in Third-Party Plaintiffs' pleading. The proposed Second Amended TPC alleges sufficient facts to state claims for relief that are facially plausible.

**F.    Eleventh Cause of Action by Third-Party Plaintiffs Against All Third-Party Defendants for Contribution**

"For contribution to be available, there generally must be a breach of duty by a party from whom contribution is sought and the breach ''must have had a part in causing or augmenting the injury for which contribution is sought.''" *O'Neill v. Ithaca Coll.*, 56 A.D.3d 869, 871 (3d Dep't 2008) (citing, *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997)).

As set forth above, Papantoniou has breached his fiduciary duties to the Third-Party Plaintiffs, aiding the Letsios parties in their scheme to defraud the Debtor and the Third-Party Plaintiffs. Accordingly, Third-Party Plaintiffs have satisfied the elements of their cause of action for contribution.

**G.    Thirteenth Cause of Action by Third-Party Plaintiffs Against the Letsios Parties and Papantoniou for Deceit**

"The elements of a deceit claim are essentially the same elements that constitute a cause of action for fraud, namely representation, falsity, scienter, deception and injury." *Morris v. Rochdale Vil., Inc.*, 2011 N.Y. Slip Op. 33315[U], *9 (Sup. Ct., Queens County 2011) (*citing*, *Henry v. Brenner*, 271 A.D.2d 647, (2d Dept. 2000); *Gelmin v. Quicke*, 224 A.D.2d 481, 638 (2d Dept. 1996).

As set forth above, Third-Party Plaintiffs have satisfied the elements of their second cause of action for fraud and constructive fraud. Accordingly, they have satisfied the elements of the thirteenth cause of action for deceit.

For all of the foregoing reasons, the motion to dismiss should be denied in its entirety.

<div align="center">

**POINT III**

**THE COURT HAS SUBJECT MATTER**
**JURISDICTION OVER THIRD-PARTY PLAINTIFFS' CLAIMS**

</div>

**A.    The Court Has Subject Matter Jurisdiction Because the Third-Party Claims are Part of a "Core Proceeding" as They Arose In NBA's Bankruptcy**

Core proceedings are those arising under the Bankruptcy Code, "and those proceedings 'arising in' a bankruptcy case, *such as matters that would not arise outside the context of the bankruptcy case*. 'Noncore matters are those 'related to' the debtor's bankruptcy case, [that is,] those whose outcome could conceivably affect the bankruptcy estate.'" *Taub v. Taub (In re Taub)*, 413 BR 81, 89 (Bankr. E.D.N.Y. 2009) (citations omitted) (emphasis supplied).  "A proceeding 'aris[es] in' a bankruptcy case when it invokes 'claims that are not based on any right expressly created by [the Code], but nevertheless, would have no existence outside of the bankruptcy.'" *Bethpage Fed. Credit Union v. Town of Huntington (In re Joe's Friendly Serv. & Son, Inc.)*, Nos. 8-14-70001-reg, 8-14-70002-reg, 8-16-8035-reg, 2020 Bankr. LEXIS 1562, at *36 (Bankr. E.D.N.Y. .June 11, 2020) (*quoting*, *Kirschenbaum v. United States DOL (In re Robert Plan Corp.)*, 777 F.3d 594, 597 (2d Cir. 2015)).

At bar, Third-Party Plaintiffs' claims affect the bankruptcy estate because it may not be properly closed out until certain overlapping claims regarding Letsios' breaches of fiduciary duty, alleged by both Third-Party Plaintiffs and the Trustee, are resolved.  First, the Trustee's claims against the Third-Party Plaintiffs are based on a "Rent Concession Agreement" that has exposed the Landlord Entities to more than $3,163,080.84 in claims by the Trustee in the primary complaint in this adversary proceeding, and which the Landlord Entities claim was forged.  (Dkt. 1; Dkt. 26 at ¶¶ 223-227.)  Accordingly. whether money the Trustee claims is actually owed to the estate by the Landlord Entities, or owed to the Landlord entities by the estate, will turn on the validity of the

Rent Concession Agreement. Accordingly, the validity of the Rent Concession Agreement affects the bankruptcy estate. Avdoulos has also filed notices of claims for rent that is due, and there are notices of claims for the four fraudulent car loans taken out by the Letsios Parties in his name.

Second, both the Amended TPC and the Trustee's complaint in the Adversary Proceeding entitled *Northern Boulevard Automall, LLC et al v. Northern Broadway Auto LLC et al,* Adv. Pro. No. 19-1045-nhl ("1045 Complaint") seek recovery from Letsios based on his breaches of fiduciary duty related to diversion of assets and resources of NBA to Marciano and Respect I. (Dkt. 26, ¶ 113; 1045 Complaint ¶¶ 66-82.)

Third, both the Amended TPC and the 1045 Complaint seek to recover from Letsios based on his breaches of fiduciary duty related to agreement he arranged for the benefit of himself and entities he controls, wile cuasinf the Debtor to incur indebtedness and expenses. Dkt. 26, ¶ 113; 1045 Complaint ¶¶ 83-94.)

All of these overlapping claims relate to allegations in the Amended TPC and affect the bankruptcy estate. Moreover, if these issues are litigated in another forum there is a significant risk of inconsistent judgments.

The Third-Party Plaintiff's claims against Papantoniou and the Letsios Parties should be deemed core because they would not have arisen but for third-party defendants' bad acts, which ultimately drove NBA into bankruptcy. To be clear, this does not mean that the Landlord Entities' claims seek to redress harms to NBA, only, as set forth above and in the Amended TPC, that the Third-Party Plaintiffs seek damages for injuries particular to them that are the result of the same course of conduct by Papantoniou and the Letsios Parties that both drove NBA into bankruptcy *and* caused the Landlord Entities' damages. The Third-Party claims asserted in this adversary proceeding would not have been brought but for NBA's bankruptcy, and "would not arise outside

the context of [this] bankruptcy case." Accordingly, the court has subject matter jurisdiction over the claims on the Amended TPC because they are part of "core proceedings."

This does not conflict with the October 5, 2022 decision and order of the Hon. Rachel P. Kovner denying the Landlord Entities' motion to withdraw the reference ("Order", Dkt. 93). The Order specifically states that the *Trustee's* claims for breach of contract, breach of fiduciary duty, and unjust enrichment may not be adjudicated by this Court, even if they are core under 28 U.S.C. § 157(b)(2). Order at p. 7. The Order does not weigh in on whether the claims asserted by the Third-Party Plaintiffs are core or non-core. Accordingly, they should be deemed core and the motion to dismiss should be denied.

Moreover, the chief case relied on by the Letsios Parties in their motion to dismiss, *In re Verrazano (In re Verrazano Holding Corp.,* (Bankr. E.D.N.Y. 1988) is readily distinguishable. *In re Verrazano* turned on whether the claims at issue would deplete assets of the estate, and whether there would be claims against the debtor. At bar, as set forth above, the a finding that the Rent Concession Agreement is invalid could deplete assets of the estate and result in further claims against it for unpaid rent, and Avdoulos has filed notices of claim.

### B.    The Court Has Subject Matter Jurisdiction Because the Third-Party Claims are "Intertwined" with NBA's Bankruptcy

To the extent that the Landlord Entities' claims are deemed non-core, the Court still has subject matter jurisdiction over the claims asserted by the Third-Party Plaintiffs. 28 U.S.C. § 157 (c)(1) expressly provides that a

> bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise *related to* a case under title 11 [governing bankruptcy]. *In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court*, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing

de novo those matters to which any party has timely and specifically objected.

(emphasis supplied). "A bankruptcy court ... has jurisdiction to 'hear a proceeding that is not a core proceeding but that is otherwise related to a [bankruptcy] case[.]' ... [C]ourts ... find 'related to' jurisdiction where the parties are sufficiently 'intertwined' with a debtor." *Bethpage Fed. Credit Union*, 2020 Bankr. LEXIS 1562, at *36-37 (citations omitted) (collecting cases).

At bar, as discussed above the issue of whether the "Rent Concession Agreement" was forged is key to resolving NBA's bankruptcy, and the claims asserted in the Amended TPC would not have been asserted but for Papantoniou and the Letsisos Parties' course of conduct which both drove NBA into bankruptcy *and* caused the Third-Party Plaintiffs' damages. Accordingly, the Court has "related to" jurisdiction over the claims in  the Amended TPC.

Moreover, the October 5, 2022 Order tacitly holds that this Court has subject matter jurisdiction over the claims in this adversary proceeding, stating that this Court "is most familiar with the facts of the adversary proceeding" and "is also deeply familiar with the facts of the underlying Chapter 11 petition."  Quoting *In re Jacoby & Meyers—Bankruptcy LLP*, No. 15-CV-7144 (RA), 2017 WL 4838388, *4 (S.D.N.Y. Oct. 25, 2017) (collecting cases), the Order goes on to hold that even if  the Court may not enter final judgement, its "'experience with claims of this nature would be useful in handling this case in an efficient manner.'" *Id.*; Order at p. 8. Accordingly, this Court not only has "related to" subject matter jurisdiction under 28 U.S.C. § 157 (c)(1) but is in the best position to rule on the Third-Party Plaintiffs' claims.

Finally, if the Court declines to exercise jurisdiction over the Third-Party claims—which it should not decline to do—then there is an extraordinary risk of inconsistent verdicts if the Third-Party Plaintiffs must bring their claims in state court.  The Third Party Plaintiffs *and the Third-Party Defendants* would be forced to restart this litigation from scratch in a court lacking in

knowledge of the history of this case and the underlying bankruptcy, resulting in a waste of judicial and party resources.  As this court is most familiar with the underlying bankruptcy, it is also in the best position to rule on the merits of all claims—such as the Third-Party claims—related to that bankruptcy.

## **CONCLUSION**

For all of the foregoing reasons, the motion to dismiss should be denied in its entirety.

Dated: New York, New York
       December 7, 2022

<div style="margin-left:40%">

Respectfully submitted,

SITARAS & ASSOCIATES PLLC

By:     */s/ Richard Diorio*_____
        Richard Diorio, Esq.
        George Sitaras, Esq.
        200 Liberty Street 27th Floor
        New York, New York 10281
        Tel: (212) 430-6410

</div>